**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond A. O'CONNOR, Defendant-Appellant.**

No. 5, Docket 25615.

United States Court of Appeals Second Circuit.

Argued Oct. 14, 1959.

Decided Dec. 21, 1959.

McDonough, Boasberg & McDonough, Buffalo, N. Y., for appellant.

Neil R. Farmelo, First Asst. U. S. Atty., Western Dist. of New York, Buffalo, N. Y. (John O. Henderson, U. S. Atty., Western Dist. of New York, Buffalo, N. Y., on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and SMITH, District Judge.

J. JOSEPH SMITH, District Judge.

Defendant, Raymond A. O'Connor, appeals from a judgment entered June 10, 1957 upon a jury verdict finding him guilty on all four counts of an indictment filed February 24, 1953 charging him with wilfully attempting to evade and defeat his income taxes for the years 1946, 1947, 1948 and 1949, by filing for each of those years an income tax return understating the amount of his taxable income. Judge Morgan imposed a sentence of five years on each of the four counts (the sentences on Counts 1, 3 and 4 to be served concurrently), and a fine of $5,000 on each of the four counts. Execution of the sentence of imprisonment on Count Two was suspended and defendant placed on probation for five years after completion of the sentence to be served on Count One.

This was the second trial of this defendant on this indictment, an earlier judgment of conviction on February 1, 1954 having been reversed by this court October 18, 1956 and a new trial ordered. United States v. O'Connor, 2 Cir., 237 F.2d 466.

The errors claimed are as follows: (1) the court's refusal to order the production of the reports of government witnesses, Agents Montz and Wetzel, (2) the court's refusal to allow the use of the agents' prior Tax Court reports and schedule for the purpose of impeachment on cross-examination, (3) inadequacy of the charge, (4) impossibility of a fair trial due to the government's loss of some of defendant's records in the period between the first and second trials, (5) refusal of the court to permit oral testimony by defendant as to opening net worth without the support of documentary evidence, (6) exclusion of defendant's oral testimony as to transactions and conversations with others since deceased, (7) restriction of proof as to defendant's opening net worth investment in Burt Cold Storage Co., (8) rejection 'by government witnesses of accounts receivable as opening assets, and accounts payable as closing liabilities, (9) the court's refusal to allow use of charts used by the government at the first trial to impeach charts used at the second trial, (10) government notices to produce served on the defense at trial as violative of the Fifth Amendment.

The indictment alleged an understatement of income for

| 1946 | of | $112,297.24 |
|------|-----|-------------|
| 1947 |     | 27,935.47   |
| 1948 |     | 54,608.90   |
| 1949 |     | 35,072.56   |

On the second trial, the government claimed defendant's opening net worth on December 31, 1945 was $361,077.86, defendant, that it was $526,204.61. Defendant was a certified public accountant with a large accounting practice, and many outside business interests, including two farms and a canning plant, inter-

ests in real estate, a cold storage business and a theatre company. The government's case was built mainly on the testimony of the agents and their computations to establish the net worth changes, although there was substantial evidence of attempts to conceal underlying records by defendant, and testimony by the defendant as to a claimed currency hoard which strains credulity.

■ In this setting, it is quite plain that the agents' reports relating to O'Connor's asset, income and expenditure position during the entire tax period in question, whether prepared for criminal or civil tax purposes, were necessary to defendant's preparation and conduct of his defense in two respects, to determine whether any statements of fact therein were inconsistent with or contradictory to testimony on the stand of the makers of the reports, and to test their expertness in preparation of the charts and computations used by them respectively on the stand. Point one, as to production, so far as it concerns the agents' reports, is well taken under the Jencks rule, Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, decided after the rulings before and in the trial of the instant case, but before the ruling on the motion for new trial. The so-called Jencks statute, Pub.L. 85–269, Sept. 2, 1957, 71 Stat. 595, 18 U.S.C. § 3500, would now require their production on trial in the circumstances of this case. 18 U.S.C. § 3500(b) provides: "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." Since statement is defined by subsection (e) to include "a written statement made by said witness," the reports herein involved would clearly seem to fall within the plain language of the statute.

While the government correctly asserts that the statute was intended to pro-

scribe production of investigative reports *as such* (emphasis added), here the government has chosen to base its case on the testimony of the agents as to the results of their investigations. Where such agents have testified, it would seem clear that their reports relating to the same investigation may be obtained by the defendant. See United States v. Prince, 3 Cir., 264 F.2d 850; United States v. De Lucia, 7 Cir., 262 F.2d 610.

If the government chooses to depend on the expertise of a witness for proof of the essentials of a criminal charge, it cannot insulate him from a thorough cross-examination by any claim of a sovereign right to secrecy of reports or methods of computation.

So far as the treatment of accounts receivable as opening assets, and the treatment of accounts payable as closing liabilities are concerned, the important consideration is consistency in treatment, so that the result arrived at does not reflect apparent increases not fairly ascribable to undeclared taxable income. The net worth theory is actually not based on net worth in the usual accounting sense, but on a comparison of proven total assets at cost at the beginning and end of a year, to determine whether there has been an increase of assets greater than can be accounted for by reported net income plus receipts other than taxable income. This involves proof of how much reportable income has been spent for non-exempt purposes, and so is unavailable to add to assets, and proof negating receipts during the period which are not taxable, such as gifts, loan repayments, withdrawal of capital, etc., as to which leads have been furnished, which could account for the increase in assets from sources other than unreported net income. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Costello, 2 Cir., 221 F.2d 668; United States v. O'Connor, supra. See Comment: The Defense of a Criminal Net Worth Tax Case in the Light of Recent Supreme Court Decisions, 41 Cornell L.Q. 106, 108. Comment: Proving Tax Evasion by the Net Worth Method, 34 Texas L.R. 606, 607. The Net Worth Approach in Determining Income, 41 Virginia L.R. 927, 940.

The claim of lack of fair trial because of loss by the government of defendant's records, prior to the second trial, is inadequately supported because of failure of proof in the record that the government was responsible for the loss and by failure to demonstrate that the loss did in fact materially handicap defendant.

Since the charge is inadequate, as noted below, and the reports of the expert witnesses should have been produced under the Jencks statute, perhaps detailed discussion of the rulings on evidence is unnecessary. We may assume that many of the questions will not arise in a third trial. However, it may do no harm to indicate that we see no apparent basis for exclusion of oral testimony by defendant to transactions within his personal knowledge, regardless of the availability of documentary support. His credibility is for the jury. Nor is there any apparent basis for imposing a "dead man" rule in a criminal prosecution. Points two and nine, complaining of the restriction on the use in cross-examination of similar materials prepared by the agents for use in O'Connor's case in the Tax Court and the first criminal trial, may also be well taken. Whether a particular chart, entry or report is in fact relevant to any testimony of the maker thereof on the trial and admissible for purposes of his impeachment is of course for determination by the trial judge. So also it is for the trial judge to determine the extent to which computations and expert opinions with relation to civil tax liability for Tax Court use may be relevant to the computations and opinions as to which the agents may testify in the criminal trial.

The demand made during the government's case in chief before the jury for the defendant to produce papers is a dangerous practice and may be prej-

udicial. See *McKnight v. United States,* 6 Cir., 115 F. 972; *People v. Gibson,* 218 N.Y. 70, 112 N.E. 730. There was no waiver by defendant up to this point in the trial, so far as appears. In the Brown, Gates and Ziegler cases relied on by the government, there were prior waivers. *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589, rehearing denied 356 U.S. 948, 78 S.Ct. 776, 2 L.Ed.2d 822; *United States v. Gates,* 2 Cir., 176 F.2d 78; *Ziegler v. United States,* 9 Cir., 174 F.2d 439, certiorari denied 338 U.S. 822, 70 S.Ct. 68, 94 L.Ed. 499.

■ The court on the earlier appeal in this case laid down a general outline of the points to be covered in a charge in a net worth case. The charge here did not sufficiently relate the theory of a net worth prosecution to the disputed questions in this long and involved trial. While perhaps the court was justified in not making a detailed recitation of all the variances between the contentions of the government and of the defense, the major contentions should have been covered more fully and more clearly related to the legal theories and the proof involved. The case took some two months to try and the proof included hundreds of exhibits. An instruction that if the jury would take all the exhibits and compare those of the prosecution with those concerning the same subject matter introduced by the defense, either directly or indirectly, it should be able to arrive at a conclusion on the whole case demonstrates the generality of the charge. The charge refers to the fact that there were many weeks of testimony concerning the defendant, his wife, his four children, his accounting partnership, Burt Cold Storage, Burt Packing and Warehouse, Inc., Falls Mortgage Corporation, and various real estate and security holdings, bank balances and cash, but fails sufficiently to relate the testimony as to these persons, entities and things to the elements of the crimes charged and the defenses on the four counts. The charge is manifestly inadequate to a complete understanding of the issues involved, even when the instructions during the course of the trial are taken into consideration.

The judgment is reversed and the case remanded for a new trial.