Raymond A. O'CONNOR and Bertha K. O'Connor, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

BURT COLD STORAGE, INC., Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nos. 595–597, Docket 32576–32578.

United States Court of Appeals Second Circuit.

Argued April 22, 1969.

Decided June 5, 1969.

John K. O'Connor and R. R. Mc-Mahan, Chicago, Ill. (Lord, Bissell & Brook, Chicago, Ill., on the brief), for petitioners-appellants.

John P. Burke, Department of Justice (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, and Joseph M. Howard, Department of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge and WYATT, District Judge.*

ANDERSON, Circuit Judge:

Petitioner Raymond A. O'Connor, a certified public accountant, has conducted an accounting business in Niagara Falls, New York since 1922. From 1923 until sometime into the 1950's, he practiced in an accounting partnership with his brother Julian under the firm name of R. A. O'Connor & Company. Julian was an active member of the partnership except for the years 1943 to 1945 when he was on active duty in the United States Navy. In addition to his accounting practice, Raymond operated two farms owned by his wife, Bertha, managed a canning plant, was treasurer and sole stockholder of Burt Cold Storage, Inc., and dealt in real estate.

Petitioner Bertha O'Connor, housewife, held in her own name several real properties, including the two farms just mentioned. Although she was generally familiar with the labor and financial problems associated with her farms, she did not assist her husband in the management of them. On the other hand, Bertha personally collected and retained the rents from some of her other real estate.

* Of the Southern District of New York, sitting by designation.

Petitioner Burt Cold Storage, Inc. (hereinafter "Burt"), incorporated in 1923, had cold storage facilities at Burt and Olcott, New York. In September 1941, one month after Raymond became treasurer and sole shareholder, Burt transferred its property and storage facilities through an intermediary to Burt Packing and Warehouse, Inc. (hereinafter "Burt Packing"), a newly formed corporation in which Julian O'Connor had a 50% interest. Among the properties transferred was a 1941 storage contract with the United States Department of Agriculture. That Department, however, refused to recognize the transfer and insisted on doing business with Burt. Indeed, in 1947 another contract was arranged with Burt, and from 1942 to 1949, Burt received payments totaling $300,099.53 from the Government. Burt in turn transferred $294,496.36 to Burt Packing as alleged compensation for fulfilling the contracts assigned to it.

In October 1951, respondent Commissioner of Internal Revenue mailed to Raymond and Bertha a joint statutory notice of deficiency. The Commissioner's determination of their income and victory tax liability for 1943 through 1949 disclosed alleged deficiencies of $233,594.62 on unreported income of $417,289.93, and alleged penalties of $129,717.04 for fraud and for substantial underestimation of estimated tax in accordance with §§ 293(b) and 294(d)(2) of the Internal Revenue Code of 1939, respectively.[1] These calculations were based on the disallowance of certain deductions claimed by the O'Connors and the unexplained increase in their net worth in each year.

At the same time, the Commissioner advised petitioner Burt of alleged deficiencies in income tax of $22,535.48, in declared value excess profits tax of $35,152.51 and in excess profits tax of $201,895.95; alleged penalties for fraud and for failure to file income and excess profits tax returns in accordance with §§ 293(b) and 291(a) of the Code, amounted to $193,305.06. These determinations were made by treating cash deposits in Burt's checking account, less allowable withdrawals from that account, as taxable income.

In January 1952, petitioners filed in the Tax Court timely petitions for a redetermination of the deficiencies and penalties assessed, and shortly thereafter the Commissioner filed his answer. There followed a long period of investigation and review by the Commissioner,[2] until May 1964 when the latter filed an amendment to the answer which included a recalculation of the O'Connors' net worth statement and which showed a reduction in the amount of unreported income for the period to $303,694.38. The trial in the Tax Court finally commenced in September 1965. Near the end of the proceedings, on April 14, 1966, petitioners amended their petition allegedly "to conform to the proof", stating that Raymond made and filed individual not joint returns and that Bertha did not make or file any tax returns for the years in question.

At the conclusion of the trial, the Tax Court found that Raymond and Bertha had filed joint returns, that the Commissioner's determination of deficiencies in his amended answer was fair, reasonable and substantially correct, and that fraud had been proven for each year. The Tax Court rejected, however, the Government's claim for an additional tax under § 294. With respect to Burt Cold Storage, the Commissioner's determinations were completely sustained.

On this appeal, petitioners' principal claims are that the Tax Court erred in holding (1) that Raymond and Bertha filed joint returns, (2) that the Commissioner discharged his burden of proving

1. All references are to the 1939 Code, unless noted otherwise.

2. The interval also included two criminal prosecutions against Raymond both of which resulted in reversals, United States v. O'Connor, 237 F.2d 466 (2 Cir. 1956) and 273 F.2d 358 (2 Cir. 1959).

that the alleged deficiency in the O'Connors' return for each year was the result of fraud, (3) that the Commissioner's net worth statement of the O'Connors' income was fair, reasonable and correct, (4) that the Commissioner's determination of Burt's income was correct, and (5) that petitioners were not deprived of a fair trial by the Government's failure to produce petitioners' checkbooks which were allegedly last known to be in the Government's possession. Taxpayers also contend that Raymond's statements to an Internal Revenue Agent before he received a warning of his right to remain silent and to be assisted by counsel were improperly admitted at trial, and that a memorandum of Raymond's assets was improperly excluded.

The first major issue in this appeal concerns the Tax Court's finding that Raymond and Bertha O'Connor filed joint tax returns in each of the seven years in question. The evidence from which the court reached this decision was conflicting. On the one hand, the tax returns filed by Raymond from 1943 through 1949 bore neither Bertha's name nor her signature, except for the 1948 return which she signed, according to her testimony, only because someone in her husband's accounting firm advised her that the law required her signature, not because she was intending to file jointly. Also, Bertha testified at the 1965 trial that she never intended to file a joint return during the years under investigation. On the other hand, Bertha, who also had business experience, did not file an individual return during the same period although she clearly had sufficient income from her properties to require the filing of a return and she knew it. Her farm income and expenses, however, were included in the returns signed by Raymond. Moreover, the Tax Court noted that, upon receipt of respondent's notice of deficiency in 1951, the O'Connors filed a joint petition for review in which they did not attack or reject the Commissioner's joint treatment of them and which they did not amend until near the conclusion of the proceedings in the Tax Court some 15 years later. Finally, Raymond, who was in a position to shed much light on his understanding of the returns and his wife's knowledge and approval thereof, was not called as a witness on behalf of his wife.

It is well settled in this Circuit that the determination that income tax returns are joint is a factual issue of the intention of the parties, Federbush v. C. I. R., 325 F.2d 1 (2 Cir. 1963), and must be affirmed unless clearly erroneous. Lamont v. C. I. R., 339 F.2d 377 (2 Cir. 1964). While the wife's failure to sign the return does not preclude a finding of a joint return, Kann v. Commissioner of Internal Revenue, 210 F.2d 247, 251 (3 Cir. 1953), it removes the presumption of correctness ordinarily attaching to the Commissioner's determination of jointness. Moreover, it shifts to the Government the burden of producing additional evidence on the issue. Proof that the return in the husband's name alone actually included both his and his wife's income and deductions would not, standing alone, satisfy that burden. Cf. McCord v. Granger, 201 F.2d 103 (3 Cir. 1952). There is, however, in the present case additional evidence to support the finding that there was a joint return. In the context of Bertha's substantial gross income, her knowledge that a return had to be filed showing that income and of Raymond's expert knowledge of the requirements for preparing and filing tax returns, it may be inferred that Bertha intended to have Raymond file for her whatever statement of income was legally required. To this extent, Raymond was acting as her agent. His inclusion of Bertha's income and deductions in the return filed and his subsequent failure to testify on the issue during the trial furnish additional supporting inferences. Also the O'Connors' joint petition in the Tax Court and their 15 year delay in challenging the Commissioner's view of the returns support the proposition that Bertha, as well as Raymond, acquiesced

in the Commissioner's characterization of the returns, especially since the court found to be unconvincing, Bertha's explanation of her intentions throughout the period. In light of all these circumstances, we cannot say that we are left with a definite and firm conviction that a mistake has been made; accordingly, the Tax Court's finding must be affirmed as not clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Nor is our emphasis on the presence of both taxpayers' genuine signatures on the tax returns under consideration in Bauer v. Foley, 404 F.2d 1215 (1968), rehearing granted, April 8, 1969, controlling here. In that case, cited by the appellant here, there was no evidence, direct or circumstantial, that Mrs. Bauer intended to file a joint return with her husband, except for her allegedly forged signature upon the return. Indeed, she had no reason to believe that she was obligated to file a return at all. It was imperative, therefore, that her signature be genuine in order to sustain the Commissioner's determination. The evidence of Bertha's intent differentiates the present case from the circumstances underlying the rationale of *Bauer*.

The taxpayers' second major allegation of error concerns the Tax Court's finding that the deficiencies in the O'Connors' income were the result of fraud. Unlike his other factual determinations, the Commissioner's allegation of fraud enjoys no presumption of correctness, but must be proven for every year. Yet, if any part of the deficiency for one year resulted from fraud, the 50% penalty provision of § 293(b) of the 1939 Code is computed against the total deficiency for that year. The O'Connors contend that the Commissioner has not carried his burden in any of the years under review.

Against the background of experience, knowledge and ability which Raymond had acquired as a Certified Public Accountant, intimately acquainted with the rules and regulations of the Internal Revenue Service and the obligations of a taxpayer thereunder, and in the light of a record showing omissions of items of income from interest, dividends, rental receipts and other sources; the inclusion of deductions for excessive and duplicate depreciation and non-allowable deductions for dependents; inadequate records; an attempt to destroy bank records to conceal transactions, and a consistent and substantial understatement of income, the Tax Court held that Raymond had acted in bad faith and with intent to defraud. We have examined the record and conclude that that finding is not clearly erroneous. In each year, there are omissions of income and improper deductions for which no satisfactory explanation is given. For example, petitioners took non-allowable deductions for dependents in 1944, 1945, 1947, 1948 and 1949. They failed to report, from 1944 to 1949, interest totalling $4,211.40 from 14 bank accounts in 11 banks. In 1943 and other years, Raymond deposited in his own account, but omitted from the tax return, dividends on Maid of the Mist stock allegedly owned by his children. In addition, income was improperly reduced by the excessive depreciation of equipment and by unlawful income splitting arrangements. Such consistent and substantial understatement of income is strong evidence of fraud, Merritt v. C. I. R., 301 F.2d 484 (5 Cir. 1962); when there is also evidence of the taxpayer's false statements, his attempt to conceal his assets and the nature of his transactions, and his incredibly casual and deceptive handling of his affairs, the trier of fact may properly conclude that the taxpayer has acted fraudulently with an intent to evade tax. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Spies v. United States, 317 U.S. 492, 499–450, 63 S.Ct. 364, 87 L.Ed 418 (1943).

Petitioners' third principal contention is that the Commissioner's net worth calculations of the O'Connors' income is incorrect. The argument includes two separate allegations: first, the inaccura-

cy of the opening net worth; and second, subsequent errors of commission and omission.

■ With respect to opening net worth, the main issue is an $80,000 cash hoard which Raymond allegedly kept in his attic. This is the typical, if unlikely, defense to a net worth prosecution, Holland v. United States, *supra*, 348 U. S. at 133, 75 S.Ct. 127, and is based on a story which this court has stated "strains credulity." United States v. O'Connor, 273 F.2d 358, 360 (2 Cir. 1959). Clearly, in light of Raymond's inconsistent and unexplained behavior in borrowing small amounts of money during the period and of his general lack of credibility, the Tax Court did not err in rejecting the claim. United States v. Ford, 237 F.2d 57, 62 (2 Cir. 1956), vacated and remanded as moot, 355 U.S. 38, 78 S.Ct. 114, 2 L.Ed.2d 71 (1957).

■ With respect to subsequent adjustments to net worth, the O'Connors have several complaints. First, they urge that the Commissioner and the Tax Court counted among their assets certain funds which beneficially belonged to their children. Allegedly included were the proceeds from the sale of the children's interest in a fish market at 1124 East Falls Street in Niagara Falls, miscellaneous funds transferred to the taxpayers by their children to be held in trust for them, and the proceeds from the sale of some Skelly Oil and Mission Corporation stock. The Tax Court's determination that the latter stock belonged to the O'Connors and not to their children, and that the miscellaneous funds were not shown to be held in trust is affirmed. However, we reverse the decision concerning the proceeds from the sale of the fish market. It is conceded that that property was inherited by Raymond and Julian from their father in equal shares, that Raymond transferred his 50% interest to Bertha in 1942 in trust for the children, that the property was sold in 1947 for about $6,000 and that Bertha's checking account shows a $6,055.68 deposit on March 13, 1947 and a $3,027.84 check to Julian

on March 17, 1947. In addition, Bertha testified that one-half of the money from the sale was kept in her account and "marked reserve for the children." Clearly, in the face of this evidence, the Commissioner's presumption of correctness was negated, and the burden of proving that the taxpayer had illegally appropriated the children's funds in 1947 or had otherwise discharged their liability to the children shifted to the Commissioner. On the record before us, that burden has not been met.

■ Second, Raymond urges that an undeposited check dated December 9, 1949 should have been included in the 1950, not the 1949 income of Raymond's accounting firm. Because the latter was clearly a cash basis taxpayer, however, the Tax Court's finding is not incorrect.

■ Third, the O'Connors argue that the Commissioner has improperly included in their net worth both the following assets and the proceeds into which those assets have been converted. (a) The Government now concedes that it improperly failed to deduct a $770 award, in 1946, for land condemnation inasmuch as there was no corresponding reduction in the cost basis of the land. Only that part of the award exceeding the cost of the condemned land is taxable as capital gain. (b) Apparently, the Commissioner also refused to reduce the cost basis of the "Equipment" category of assets to reflect the 1946 sale of some of Raymond's canning equipment; the refusal is based on Raymond's continued depreciation, after the sale, of the full original cost of the canning equipment. This approach was incorrect. Instead, 1946 ending net worth should have been decreased by an amount equal to the cost basis of the property sold, with a compensating adjustment, if any, for the excessive depreciation. (c) Petitioners next urge that a $200 deposit in their account represents the redemption of a bond listed among their securities assets at that figure. The Tax Court is not clearly erroneous in sustaining the Commissioner on this point, because the bond could have been found to have had

a zero cost basis and because it was consistently included in starting and ending inventory for the redemption year. (d) Error is alleged in the inclusion among 1948 closing assets of a $1700 insurance payment for property destroyed by lightning. The propriety of this action, however, turns on the underlying determination of the ownership of the destroyed property. Because the evidence concerning ownership was conflicting and could support a finding that Raymond had not acquired the property, we cannot say that the Tax Court erred in rejecting Raymond's claim. (e) The Commissioner refused to make a non-income adjustment for a $1500 mortgage which was allegedly discharged in 1948. In the absence of convincing evidence of the existence of either the mortgage or the payment that refusal was justified.

■ The remaining alleged error in the calculation of net worth involves the refusal to include several accounts receivable among the taxpayers' assets. At best, the evidence to support these receivables was conflicting; moreover, investigation of leads given to substantiate the claims did not prove fruitful. Accordingly, the Tax Court's acceptance of the Commissioner's position is affirmed.

■ The fourth major issue on appeal is the accuracy of the Commissioner's determination of Burt's income. In large part, Burt's problems arose from the insistence of the Department of Agriculture on doing business with Burt, despite Burt's alleged assignment of the contracts to Burt Packing. The Department ordered that payments under the contracts continue to be made to Burt and refused to release Burt from liability on the performance bond. As a result, Burt received from the Department, from 1942 to 1949, the sum of $300,099.53 of which $294,496.36 was transferred to Burt Packing pursuant to the latter's rights under the allegedly assigned contracts. The Tax Court concluded, however, that the contracts were not assignable in the ordinary sense, and that Burt was, therefore, not obligated

by the purported assignment to make the payments to Burt Packing. We cannot say that the court was clearly erroneous in this determination.

■ On the other hand, the Tax Court was satisfied that Burt Packing did render services in connection with fulfillment of the Government contracts. However, because there was no evidence from which it could determine what portion of the $294,496.36 payment to Burt Packing was for services rendered, the Tax Court, pursuant to the rule of Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2 Cir. 1930), estimated that 20 per cent of the amount paid was applicable to such services and was deductible by Burt. That determination cannot stand, in the face of the undisputed fact that Burt's entire storage facilities were transferred to Burt Packing in 1941. In the absence of evidence that administrative details account for 80% of the cost of this kind of storage operation in the cold storage industry and that Burt performed that administrative function here, it is hard to believe that Burt Packing's actual storage of the commodities was worth as little as the Tax Court suggested. We are convinced that the Department of Agriculture would not pay $300,000 for storage services otherwise available for only $60,-000. On remand, the Tax Court must base its estimate on a foundation more rationally related to the factual circumstances of this case and inferences reasonably to be drawn therefrom.

■ There is some discussion in the briefs of a settlement stipulation between the Commissioner and Burt Packing with respect to the $294,496.36 payment. Burt states that the entire amount was treated as taxable income to Burt Packing. The Commissioner does not deny that suggestion, but he correctly notes that there is no support for it in the record. Inasmuch as these transactions are fundamentally interrelated, however, on remand the taxpayer may properly introduce that stipulation for whatever bearing it may have on the nature of the payments—for example, it

may prove dispositive of whether the payments constituted loans or advances or distributions of profits, possibilities which the Government claims were not adequately explained away or accounted for by Burt.

■ A subsidiary question involves the determination for the taxable year ending June 30, 1942 of a deficiency arising from Burt's understatement of gross sales and overstatement of deductions. Although we are convinced that the Tax Court did not err in rejecting the explanations offered, on appeal the petitioner has, for the first time, suggested the existence of operating loss carryovers from 1941, which would more than offset the deficiency in 1942. While this late reference to these alleged carry-overs would not justify reversal of an otherwise error-free decision, cf. Dally v. Commissioner of Internal Revenue, 227 F.2d 724, 726 (9 Cir. 1955), the issue may be raised by an appropriate motion before the Tax Court on remand.

Petitioners' last major contention is that they were deprived of a fair trial by the Government's alleged negligent suppression of eight business checkbooks with check stubs, cancelled checks and notations, including four of Raymond's checkbooks for the years 1946 through 1949, two of Burt's checkbooks for 1944 through 1949 and two checkbooks of Burt Packing for 1948. These books were introduced by the prosecution at the first criminal trial against Raymond, but vanished thereafter. Extensive hearings on the disappearance were held at the second criminal trial, after which, on appeal, this court rejected Raymond's claim because of the "failure of proof in the record that the government was responsible for the loss and * * * that the loss did in fact materially handicap defendant." United States v. O'Connor, 273 F.2d 358, 361 (2 Cir. 1959). Nevertheless, the merits of petitioners' contention were considered anew by the Tax Court which reached a similar conclusion.

■ It is abundantly clear that the taxpayers have failed to show either the Government's responsibility for the loss or their own prejudice therefrom. Moreover, the claim of the indispensability of the books is tempered in part by the admission in evidence of certain of Revenue Agent Montz' take-offs which the Tax Court found to be accurate copies of the checkbooks for 1947 through 1949, and by Raymond's failure to document instances in the first criminal trial where the availability of the missing records was of significant value to the defense. In these circumstances, the taxpayers' allegation of error must be rejected. Nor does United States v. Consolidated Laundries Corp., 291 F.2d 563 (2 Cir. 1961), upon which petitioners rely, compel a different result. In that case, we determined that the Government's negligence was proved and that the material would have been of obvious benefit to the defense; furthermore, the missing material had been located and would, therefore, be available at the re-trial. Clearly, none of these factors was present in this case.

■ Finally, petitioners urge that the Tax Court (1) improperly admitted a Revenue Agent's testimony of conversations with Raymond before the latter had been warned of his right to remain silent and to be assisted by counsel, and (2) improperly excluded memoranda of assets as of June 1, 1943 and December 31, 1945, prepared by an associate of Raymond's firm on the occasions of Julian's departure for and return from military service. With respect to the first point, it is well settled in this Circuit that noncustodial questioning by Internal Revenue Agents is not subject to the *Miranda* requirements, United States v. Dawson, 400 F. 2d 194, 206 (2 Cir. 1968), cert. den. 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969). As this is so in a criminal case, there can be no doubt that it is so in the present case which is civil. Moreover, *Miranda* applies only to cases the trial of which commenced after June 13, 1966 and the trial of the present case started in September, 1965. On the second issue, we concur in the Tax Court's view-

point that the memoranda were not admissible under the Business Records Statute, 28 U.S.C. § 1732. They were not records of an act, transaction, occurrence or event made in the regular course of business, but instead were prepared in extraordinary circumstances upon information and documents supplied by Raymond. As such, the Tax Court found that they failed both tests on which the theory of § 1732 rests; that is, they were neither routine nor circumstantially reliable.

The opinion of the Tax Court is affirmed, with the exception of the court's determination of the net worth statement of the O'Connors' income and its calculation of Burt's income, both of which are reversed and remanded for further proceedings in accordance with this opinion.