MICHAEL FRANCIS LODISE, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lodise v. Commissioner
Docket No. 7790-87.
United States Tax Court
T.C. Memo 1988-463; 1988 Tax Ct. Memo LEXIS 498; 56 T.C.M. (CCH) 311; T.C.M. (RIA) 88463; September 26, 1988; As amended September 29, 1988 Michael F. Lodise, Jr., pro se. Daniel Morman, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioner's 1980 and 1981 Federal income tax of $ 25,211 and $ 47,309 respectively, and additions to tax pursuant to section 6653(b)(1) [1] of $ 12,991 for 1980 and $ 23,654.50 for 1981. [2] We must decide whether petitioner understated *499 his taxable income for 1980 and 1981 and whether the underpayments for those years were attributable to fraud. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner was a resident of Philadelphia, Pennsylvania at the time the petition in this case was filed. In 1980 and 1982 petitioner was the Chief Auditor of the Philadelphia Traffic Court. As Chief Auditor, petitioner was responsible for the deposit of checks and cash at the bank on behalf of the Philadelphia Traffic Court ("PTC"). Petitioner had control over miscellaneous unaccounted for checks and money orders. During the years in issue petitioner was a compulsive gambler and embezzled funds from the PTC to support his uncontrolled habit. A cashier for PTC would collect cash receipts and accounted for checks outside petitioner's control, list the amount of cash and checks on a deposit slip, and would deliver *500 the cash, checks and deposit slip to petitioner who was responsible for depositing them in PTC's bank account. Regularly each week during the years in issue, petitioner would pocket the cash given him by the cashier, replace it with the miscellaneous, unaccounted for checks over which he had control, prepare a new deposit slip, and discard the deposit slip prepared by the cashier. The deposit slip prepared by petitioner and checks would then be delivered to a PTC employee who would make the deposit at the bank. Petitioner realized $ 61,824 in 1980 and $ 108,271 in 1981 from his embezzlement scheme. Although petitioner testified that all of this money was lost gambling, he did not substantiate these losses. He reported $ 5,461.80 worth of gambling gains and losses on his 1981 return. Since 1979, in addition to other jobs he has held, petitioner has been self-employed as a Federal income tax return preparer. Petitioner completed several accounting courses during his three years of college education. Petitioner knew the amount of cash he embezzled in each instance, and he knew that the embezzled funds should have been reported as gross income on his Federal income tax returns *501 for the years in issue. Indeed, in Michael F. Lodise, Jr. v. Commissioner,T.C. Memo. 1977-157, we held petitioner liable for Federal income tax on funds he had embezzled in 1973 and for an addition to tax for fraud because he intentionally did not report the embezzled funds on his 1973 return. OPINION Petitioner stipulated that he realized income from his embezzlement activities of $ 61,824 and $ 108,271 for 1980 an 1981, respectively. Petitioner argues that during the years in issue he was in the "trade or business" of gambling and that pursuant to Commissioner v. Groetzinger,480 U.S. 23 (1987), his gambling losses should be allowed to offset any other income he might have had during 1980 and 1981 including his income from embezzlement. [3] Petitioner's argument is based on the assumption that he has proven his gambling losses, which he has not. Other than his general statements that he gambled daily, petitioner presented no detailed evidence that his gambling activity produced losses. Therefore, petitioner may not offset any of his 1980 and 1981 income with his alleged gambling losses. *502 We now must decide whether petitioner's underpayment of tax was attributable to fraud. Respondent bears the burden of proving fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. Fraud is a factual question to be resolved by an examination of the entire record. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). To establish fraud, respondent must prove by clear and convincing evidence that petitioner acted with specific intent to evade taxes that he knew or believed he owed. Stephenson v. Commissioner,79 T.C. 995, 1005 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Rule 142(b). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each of the years in issue is attributable to fraud. Lee v. United States,466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court. Fraud is never presumed, Beaver v. Commissioner,55 T.C. 85, 92 (1970), but may be proven by circumstantial evidence because direct *503 proof of a taxpayer's intent is rarely available. Stephenson v. Commissioner,79 T.C. at 1005-1006. Courts have relied on a number of indicia of fraud in deciding section 6653(b) cases. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive circumstantial evidence. Solomon v. Commissioner,732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam a Memorandum of Opinion of this Court; Beaver v. Commissioner,55 T.C. at 93. First, a pattern of underreporting over an extended period of time is indicative of fraud. Foster v. Commissioner,391 F.2d 727, 733 (4th Cir. 1968), affg. on this issue a Memorandum Opinion of this Court; Brooks v. Commissioner,82 T.C. 413, 431 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). Second, a failure to maintain adequate books and records may indicate fraudulent intent. Estate of Upshaw v. Commissioner,416 F.2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court, cert. denied 397 U.S. 962 (1970). Third, a taxpayer's business *504 experience and knowledge of the tax laws may tend to prove or disprove the existence of fraud. See O'Connor v. Commissioner,412 F.2d 304, 310 (2d Cir. 1969), affg. on this issue a Memorandum Opinion of this Court, cert. denied 397 U.S. 921 (1970). Finally, a taxpayer's dishonesty in business transactions or willingness to defraud others may indicate a willingness to defraud respondent. Afshar v. Commissioner,T.C. Memo. 1981-241, affd. without published opinion 692 F.2d 751 (4th Cir. 1982), cert. denied 461 U.S. 928 (1983). All of these factors are present in this case and clearly and convincingly demonstrate that petitioner acted with fraudulent intent. Petitioner had substantial knowledge of the tax law. Specifically, he knew that the funds he embezzled were income to be reported on his Federal income tax returns. Indeed, petitioner's prior case in this Court presented the identical issue he litigates here. Petitioner defaulted in responding to requested admissions in that case, and the Court held him liable for his fraud. Subsequent to our opinion in petitioner's prior case, petitioner still kept no *505 records of his embezzlement income and continued not to report it. Finally, although petitioner's gambling was compulsive, his embezzlement was a fraud on the public and on his employer. We, therefore, hold that respondent has met his burden of proving fraud by clear and convincing evidence. Petitioner testified that he had reformed his character and now abstains from all gambling. Petitioner is to be commended for persevering in his struggle to control his compulsive gambling, but his reformation does not excuse his liability for the consequences of his actions. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, unless otherwise indicated. ↩
2. In his answer respondent also claimed additions to tax pursuant to section 6651(a) for each year. In his brief respondent concedes this issue. ↩
3. Section 165(d) provides that losses from wagering transactions shall be allowed only to the extent of gains from such transactions. We leave to another case whether there is any merit to the argument that a professional gambler in the trade or business of gambling may use his gambling losses to offset other income. See Winkler v. United States,230 F.2d 766↩ (1st Cir. 1956).