T.C. Memo. 1995-462


UNITED STATES TAX COURT


LESLIE R. BARTH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11610-91.                Filed September 27, 1995.


<u>Leslie R. Barth</u>, pro se.

<u>Elise Frost Alair</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  In a statutory notice sent March 7, 1991, to Leslie R. Barth (petitioner) and Terry E. Barth (Ms. Barth), respondent determined deficiencies and additions to tax as follows:

|        |            | Additions to Tax |
|--------|------------|------------------|
| Year   | Deficiency | Sec. 6653(b)     |
| 1976   | $136,503   | $68,252          |
| 1978   | 109,645    | 55,317           |
| 1979   | 173,243    | 86,622           |
| 1980   | 191,834    | 95,917           |

In a separate statutory notice sent March 7, 1991, to petitioner, respondent determined a deficiency of $152,448 in petitioner's Federal income taxes and additions to tax of $76,244 under section 6653(b) and $5,425 under section 6654 for 1977.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner and Ms. Barth filed separate petitions.  Her case was docketed as No. 11150-91.  After a consolidated trial, respondent entered into a stipulated decision with Ms. Barth in which it was agreed that there are no deficiencies in or additions to tax due from her.  The issue remaining for decision is whether petitioner is liable for the additions to tax for fraud.  The deficiencies and the addition to tax under section 6654 determined by respondent are decided against petitioner by reason of his failure properly to prosecute this case; the reasons for that action are discussed below.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.

Petitioner resided at the Federal Correctional Institute in Danbury, Connecticut, at the time that his petition was filed.

Petitioner graduated from the Wharton Business School at the University of Pennsylvania in 1957 and from Harvard Law School in 1960. Between 1960 and 1964, petitioner was employed by the office of Tax Legislative Counsel, U.S. Department of the Treasury; served with Army Intelligence; and was employed by the accounting firm of Touche, Ross & Co. In 1964, petitioner commenced the private practice of law in a partnership that later became a professional corporation (Bergman & Barth). Bergman & Barth specialized in tax matters, estate planning, pensions, and corporate planning. Petitioner was the managing partner and prepared the tax returns for Bergman & Barth. (He was admitted to the U.S. Tax Court bar May 5, 1970.)

An agreement dated July 29, 1976, under which Bergman & Barth bought petitioner's shares in that firm included the following terms:

> 2. Buyer agrees to pay Barth [petitioner] for said shares of capital stock the principal sum of One Hundred Thousand ($100,000.00) Dollars in manner and form as follows:
>
> a. One Hundred Thousand ($100,000.00) Dollars thereof at the Closing hereinafter described in manner and form as set forth in Schedule A attached.
>
> 3. Buyer agrees to pay Barth deferred compensation in the amount of Two Hundred Fifty-one Thousand One Hundred Twenty Dollars and Forty-nine Cents ($251,120.49) and Barth agrees that he will report said sum as earned income when paid on his

proper income tax return and the Buyer agrees it will issue a timely form 1099.  Such amount shall be paid in manner and form as follows:

a.  Two Hundred Fifty-one Thousand One Hundred Twenty Dollars and Forty-nine Cents ($251,120.49) thereof at the Closing hereinafter described in manner and form as set forth in Schedule B attached.

During 1976, petitioner received checks totaling $351,150.19 from Bergman & Barth.

On or about March 1, 1976, petitioner began to practice law under the name Leslie R. Barth, Associates, P.C. (the law firm). Petitioner was the sole owner of the law firm, although the name was changed on or about June 1, 1978, to Barth & Richheimer, P.C. During each of the years in issue, petitioner provided clients with legal advice on Federal income tax matters.

During the years in issue, petitioner conducted business through a variety of corporations and other entities controlled by him.  The law firm and other entities controlled by petitioner issued checks to petitioner, to Ms. Barth, and to other entities or accounts controlled by petitioner in the following amounts:

| Year | Amount |
|------|--------|
| 1976 | $207,924.71 |
| 1977 | 258,696.39 |
| 1978 | 181,358.00 |
| 1979 | 403,443.61 |
| 1980 | 331,964.57 |

Funds withdrawn by petitioner from the various accounts were used for personal purposes during the years in issue.

During the years in issue, petitioner maintained a home in Fairfield, Connecticut, that had 16 rooms and was situated on 10.6 acres of land. Petitioner acquired a collection of automobiles. As of 1979, petitioner maintained at his residence in Connecticut no fewer than 10 automobiles, including a 1979 Rolls Royce, a 1977 Jaguar, two 1972 Ferraris, and 5 Mercedes ranging from the 1971 model to a 1979 model. Petitioner registered a 1975 Pontiac in his name, but all of the other automobiles were registered in the name of International Automobiles, Ltd., an entity that purported to be a business conducted by petitioner or by petitioner and Ms. Barth as partners, but which conducted little or no actual business activity.

During the years in issue, petitioner submitted financial statements to various institutions. On financial statements dated September 29, 1977, October 10, 1978, and April 19, 1979, petitioner represented that his compensation from his law firm was $225,000. On two financial statements dated September 19, 1980, he represented that his compensation from the law firm was $250,000. In March 1980, petitioner signed a Form 1120S, U.S. Small Business Corporation Income Tax Return, for his law firm. That return showed petitioner's compensation as $700,000. Petitioner, however, did not file that return.

Petitioner did not file timely Federal income tax returns for the years in issue for himself, for the law firm, or for

other entities with which he was involved.  On July 9, 1980, he filed an individual joint return for 1976.  Petitioner did not file a Federal income tax return for 1977.  No later than 1982, the Internal Revenue Service (IRS) commenced an investigation of petitioner.  On April 3, 1986, petitioner pleaded guilty to failure to file his personal income tax return for 1979 in violation of section 7203.  On May 19, 1986, he filed individual joint returns for 1978, 1979, and 1980 in order to receive favorable consideration at the time of sentencing on his conviction.

In late 1979 or early 1980, attorneys for petitioner employed William Lipton (Lipton), who was then a partner at the accounting firm of Ernst & Whinney, to prepare petitioner's Federal tax returns for 1978, 1979, and 1980.  For approximately 3 years, Lipton attempted to reconstruct for petitioner books and records in order to prepare returns.  The records, however, were in terrible shape, consisting of nothing but check stubs and canceled checks.  Brian Onofrio (Onofrio), an employee of petitioner, also attempted to reconstruct petitioner's records in order to prepare tax returns for the years in issue.  Richard Timbie (Timbie) was one of several lawyers representing petitioner in relation to his failure to file returns.

Petitioner's return filed for 1976 reported adjusted gross income of $4,315.86.  He claimed a loss from the law firm as a subchapter S loss and did not report the income received from

Bergman & Barth. Petitioner's returns for 1978, 1979, and 1980 reported adjusted gross income of $69,434, $21,773, and $126,685, respectively. Attached to each return, on the advice of Timbie, was a statement that the income reported on the return did not include amounts "withdrawn by the taxpayer from this law firm and other related entities. Those withdrawals were contemporaneously recorded as loans and were repaid by the taxpayer in the taxable year or in subsequent years." The amounts thus excluded from taxable income reported on the returns were $174,300 for 1978, $282,900 for 1979, and $83,600 for 1980.

No loan documents were ever prepared or executed by petitioner. The amounts claimed to be loans were reconstructed from notes on check stubs, and no records showing actual repayments were maintained. On the financial statements that he submitted during the years in issue, as set forth above, petitioner did not disclose any loans due to the law firm or his other entities.

After examination of the returns belatedly filed by petitioner, respondent determined that petitioner had additional compensation, interest, and other income for the years in issue. For 1976, respondent determined that no election was filed to qualify the law firm as an S corporation and that it had not been established that any deductible loss was sustained. The net adjustments determined by respondent increased petitioner's income by $306,673 for 1976, $226,905 for 1978, $396,008 for

1979, and $327,194 for 1980.  Respondent also determined that petitioner had unreported taxable income of $238,640 for 1977. From 1991 through 1995, petitioner failed to provide to respondent any indication that these amounts were incorrect.

## OPINION

Before discussing our conclusions with respect to fraud, we set forth the lengthy procedural history of this case.  That history explains in part why we conclude that petitioner's representations are not credible and why we determine the deficiencies in issue against him by reason of his defaults.

## Procedural History

In his petition filed June 10, 1991, petitioner alleged that all of respondent's determinations were in error.  As the facts upon which he relied, he alleged:

> (A) At the present time, due to my incarceration at the Federal Correctional Institute Danbury, Route 37, Pembroke Station, Danbury, CT 06811, it is impossible for me to allege facts in support of my assignments of error as the necessary records and documents are not available to me.  Upon my release, I will prepare an amended petition in order to comply with the Court's Rules.

Petitioner designated New York, New York, as the place of trial for this case.

Petitioner never sought leave to file an amended petition. In the answer, respondent alleged, in support of the determination that the underpayments of tax for the years in

issue were due to fraud, facts concerning petitioner's education and employment; his failure to file timely returns; the omission of substantial amounts of income on the returns that were belatedly filed; and his failure to maintain, or to submit for examination, complete and adequate books and records. Petitioner belatedly filed a reply, denying the allegations but not setting forth any specific facts contradicting them.

By notice served August 28, 1992, this case was set for trial in New York on February 1, 1993. On November 10, 1992, petitioner filed a Motion for Continuance and a Motion to Change the Place of Trial to Hartford, Connecticut. In the Motion for Continuance, petitioner represented that he was released from the Federal Correctional Institute on August 22, 1991, and, since then, had been attempting to obtain his records to prepare properly for trial. He also represented that he had been attempting to accumulate sufficient funds to retain counsel. Petitioner's motions were granted.

By notice served January 6, 1993, the case was set for trial on June 7, 1993, in Hartford, Connecticut. On May 13, 1993, petitioner filed a Motion for Continuance, representing that he had been indicted by the United States on several counts of mail fraud, that his mail fraud trial was scheduled to commence on May 10, 1993, and that he was unable to prepare for trial in this case during the mail fraud trial. Respondent did not object, and petitioner's motion was granted.

By notice served January 5, 1994, this case was set for trial in Hartford, Connecticut, on June 6, 1994. On April 8, 1994, petitioner filed a Motion for Continuance. Petitioner represented that he was in the process of seeking to set aside a guilty verdict entered against him in the mail fraud case and that, therefore, he could not prepare for trial of this case.

On April 18, 1994, respondent filed a Motion to Compel Production of Documents, and, on April 25, 1994, respondent filed a Motion to Compel Responses to Respondent's Interrogatories. Respondent's Motion to Compel Production of Documents was granted, and petitioner was ordered to produce the documents on or before May 6, 1994. Respondent's motion with respect to interrogatories was granted, and petitioner was ordered to respond to the interrogatories on or before May 16, 1994. The motions were set for hearing with respect to sanctions on June 6, 1994.

Meanwhile, on April 28, 1994, Ms. Barth filed a Motion to Consolidate this case with her case. That motion was granted May 3, 1994. In a subsequent telephone conference call among the parties and the Court, the Court indicated that petitioner's Motion for Continuance would be granted only if he cooperated with respondent with respect to the stipulation of facts and responded to the outstanding discovery. Thereafter, Ms. Barth moved for a severance of the cases, representing that her

psychological health required that she seek immediate resolution of the innocent spouse and duress issues that she had raised.

When the cases were called for trial on June 6, 1994, respondent filed a Motion for Sanctions against petitioner, reporting on petitioner's failure to comply with the outstanding Court orders. Ms. Barth's Motion for Severance was denied, and the cases were set for trial June 13, 1994.

On June 13, 1994, the First Stipulation of Facts was filed. Trial commenced with respect to the issues raised by Ms. Barth. Witnesses who testified on June 13 and 14, 1994, included petitioner, Lipton, and Timbie. On June 14, 1994, petitioner was directed to answer the interrogatories by September 12, 1994. The Court advised the parties that the trial would be resumed in the spring of 1995, probably in New York City, which petitioner had identified as his then current center of activity. The parties were directed to file a joint written status report on or before October 11, 1994, and petitioner's Motion for Continuance was granted with respect to further trial at a time and date to be set after the filing of the joint written status report.

On October 14, 1994, a status report was filed by Ms. Barth and respondent. Respondent reported that petitioner had responded to the interrogatories but that a further conference was necessary to draft a second stipulation of facts and to develop further the cases for trial.

By Order served November 4, 1994, the cases were set for trial in New York City on April 3, 1995. The parties were ordered to submit on or before March 3, 1995, trial memoranda setting forth a discussion of the issues remaining to be tried and the legal authorities relied on by the parties, identifying each witness to be called at trial with a brief summary of the anticipated testimony of such witness, and other matters. The Order stated: "Witnesses who are not identified in the trial memorandum will not be permitted to testify at the trial without leave of the Court upon sufficient showing of cause." The requirement of the trial memorandum had been included in the Standing Pre-Trial Order served with each prior notice of trial, but petitioner never submitted a trial memorandum.

The Order served November 4, 1994, also required the filing of a stipulation of facts on or before March 3, 1995. Ms. Barth and respondent entered into a Second Stipulation of Facts, attaching a variety of records showing receipt by petitioner of amounts determined by respondent to be unreported income and attaching various tax returns filed for entities controlled by petitioner over a period of time. Petitioner failed to cooperate with respondent and Ms. Barth's counsel with respect to this stipulation of facts.

On December 5, 1994, respondent's request for admissions was filed, reflecting service on petitioner on December 2, 1994. Petitioner did not respond to the request for admissions.

In early January 1995, in a telephone conference call among the parties and the Court and Stephen R. Field (Field), an attorney for petitioner who had not entered his appearance in this case, petitioner requested a continuance for the purpose of employing Field to represent him. The Court advised petitioner that no continuance would be granted in view of the history of this case.

The case was called for trial on April 3, 1995, in New York City. Respondent filed a Motion for Sanctions and a Motion to Dismiss for Failure Properly to Prosecute. The Second Stipulation of Facts executed by respondent and Ms. Barth was filed. Petitioner arrived late and filed a Motion for Continuance based upon the pendency of an appeal from his mail fraud conviction. His Motion for Continuance was denied, and the Court stated that respondent's motions would be granted with respect to the deficiencies. The Court indicated that the trial would proceed with respect to the fraud issues and those issues involving Ms. Barth. The Court advised petitioner that he could testify but that he could not call any other witnesses because of his failure to file a trial memorandum or to have present those witnesses. Petitioner thereafter testified that he would have called Timbie and Onofrio as witnesses, but he admitted that he had not taken any steps to produce them for the trial.

Petitioner represented that he intended to employ Field as his attorney by April 30, 1995, and that he was in consultation

with Field about his testimony in this case. The Court advised petitioner that he could move to set aside the defaults previously declared and that cooperation with respect to the second stipulation of facts and his testimony might help him in that regard. Petitioner then indicated that most of the items set forth in the second stipulation of facts were agreeable. At no time during his testimony, however, did petitioner show any error or suggest any specific error in respondent's determination with respect to the deficiencies.

On April 5, 1995, the case was submitted. Petitioner was advised that he had until May 5, 1995, to make any motions to be relieved of his prior defaults, to vacate admissions, or to strike any exhibits to which a valid evidentiary objection could be made. The Court stated:

> you must include a detailed offer of proof, including copies of any documents that you would offer in evidence such as transcripts of prior testimony and a summary of the anticipated testimony that you or any other witness could give at any further trial if the record were reopened.
>
> You're certainly going to have to show good cause, and I frankly doubt it, because on the basis of the history so far, I've drawn the inference that you had never any intention to prosecute this case, but only to delay it. But if you--I do have to consider any such motions with regard to the interest of justice, and you're obviously going to have to offset any prejudice to the Court, to Respondent and to Mrs. Barth from the delays and from not resolving it at that point.

The Court directed that, in the absence of an order granting any subsequent motions by petitioner, simultaneous opening briefs were due from the parties July 5, 1995, and answering briefs were due August 21, 1995.

On May 8, 1995, petitioner filed a Motion for Reconsideration of Default Judgment and New Trial and Offers of Proof. Petitioner offered no excuse for his prior failures to comply with Court Orders or to proceed to trial, had not as of that time employed counsel, and merely represented that he was "prepared to contact respondent in the ensuing week to discuss a possible third stipulation of facts." Petitioner's Offers of Proof consisted of a statement of his intention to call Timbie, who would give his opinion that the returns were prepared "in accordance with the provisions of the applicable Internal Revenue Code and applicable regulations" and Onofrio, who would testify that he had access to petitioner's records and would give the same opinion. Further, according to the offer of proof, the witnesses would testify that petitioner did not intend to misstate or misrepresent his income.

Because the proffered testimony of Timbie and Onofrio was primarily inadmissible opinion, was inconsistent with the testimony previously given by Timbie and Lipton, and was not sufficient to comply with the Court's direction, petitioner's motion for reconsideration was denied May 22, 1995. Petitioner failed to file the briefs ordered by the Court.

## Discussion

Petitioner has attempted to delay this proceeding indefinitely, without any indication that he has additional evidence to present on the merits of the deficiencies. The documents received in evidence and petitioner's admissions support respondent's determinations of substantial amounts of unreported income, refute the contention on petitioner's belatedly filed returns that cash received by him during the years in issue constituted loans, and contain no suggestions that petitioner is entitled to deductions not previously allowed. During the 5 years from the time that his returns were filed and the additional 4 years that this case has been pending, petitioner has failed to specify errors in respondent's determinations of the amounts of his unreported income. We are satisfied that no injustice has resulted from our determination that he is liable for the deficiencies determined by respondent.

During trial, we cited to petitioner, and he acknowledged familiarity with, our opinion in Brooks v. Commissioner, 82 T.C. 413 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). He was thus well aware that his failure to proceed as ordered by the Court would ultimately lead to resolution of these issues against him, but he made no attempt to comply. Respondent's motion to dismiss shall be granted under Rules 123, 142(a), and 149(b). See Brooks v. Commissioner, 82 T.C. at 422-430, and cases cited therein.

Petitioner also has the burden of proof with respect to the addition to tax under section 6654 for 1977. That addition to tax is mandatory, absent exceptions not shown to exist here. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Respondent's determination in that regard must also be sustained.

The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, that some part of an underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The

taxpayer's entire course of conduct may establish the requisite fraudulent intent.  Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969).

The failure to file tax returns, without more, is not conclusive proof of fraud; such omission may be consistent with a state of mind other than the intention and expectation of defeating the payment of taxes.  Stoltzfus v. United States, supra; Cirillo v. Commissioner, 314 F.2d 478, 482 (3d Cir. 1963), affg. in part and revg. in part T.C. Memo. 1961-192; Kotmair v. Commissioner, 86 T.C. 1253 (1986).  Failure to file, however, may be considered in connection with other facts in determining whether an underpayment of tax is due to fraud.

Petitioner's return for 1976 was filed 3 years late.  He did not file a return for 1977.  His returns for 1978, 1979, and 1980 were filed only after he was investigated by the IRS and in relation to sentencing on his conviction under section 7203. Because petitioner failed to maintain complete and accurate records, his representatives could not prepare accurate returns. Petitioner's training and experience and knowledge of the proper way to keep books and records and report taxable income must be considered.  Under these circumstances, we infer that the failure to file returns and the failure to maintain records were intended to conceal his income and avoid payment of taxes.  See Scallen v. Commissioner, 877 F.2d 1364, 1370-1371 (8th Cir. 1989), affg. T.C. Memo. 1987-412; O'Connor v. Commissioner, 412 F.2d 304, 310

(2d Cir. 1969), affg. on this issue and revg. T.C. Memo. 1967-174; Grosshandler v. Commissioner, supra at 19-20.

Petitioner's asserted during his testimony that he relied on Lipton, Onofrio, and Timbie to prepare his tax returns. With respect to the purported loans, he testified:

> a significant portion of the proceeds that I received from the Bergman & Barth firm, which, in the aggregate, deferred compensation and capital gains, et cetera, aggregated close to $400,000, to the best of my knowledge, was rerouted, in other words, through the PC and other entities.
>
> In other words, loans were made by myself individually to the PC and to the other related entities from the proceeds that I realized on the Bergman & Barth sale. So that obviously if one were dealing with just the checks that were written to me, number one, they don't reflect rather significant loans, which I believe at least a significant part of the interest has been checked and allowed by the IRS.
>
> And, also, as I say, it doesn't reflect the good part of the $400,000 that got rerouted, in other words, through those accounts. So it was those analysis, in other words, that I went through with Mr. Timbie and with Mr. Onofrio, in other words, to present the clearest picture. And the main point of focus that Mr. Timbie had with respect to the loans and I think which lead to the statements being attached to the returns was the issue in subsequent years, years subsequent to 1980.
>
> What happened was--let me take that back. What happened is in the early years, there was a credit balance running from the entities to me. In other words, I lent them more money than they lent me and they were repaying it. There was a time when it ran the other way, in other words, where I owed them and the matter ultimately was repaid in years subsequent to 1980. The repayment years were primarily, I believe, 1984 and 1985.

So that at the time that the statement was made, I think--I don't recall the exact words, but it was indicated that amounts were advanced, in other words, which were repaid during the current year or in subsequent years.

This testimony does not in any way exonerate petitioner. "Rerouting" funds received from Bergman & Barth would not make them nontaxable. To the contrary, petitioner's "rerouting" transactions, in the context of the entire record of how he used multiple entities and devices to minimize or avoid taxes, are evidence of an intent to conceal income. Petitioner's prior admissions of income from the firm of at least $225,000 for each of the years in issue, made on various financial statements, belie the later claims that he received only loans and no significant taxable income from the firm. From petitioner's statement that he "went through" the analysis with Timbie and Onofrio, we infer that they simply accepted petitioner's representations that certain amounts were loans.

In this case, petitioner cannot hide behind his employment of others belatedly to prepare his returns. He did not provide accurate, complete, or comprehensible records to the persons that he employed to prepare the returns. See Scallen v. Commissioner, supra at 1371; Foster v. Commissioner, 391 F.2d 727 (4th Cir. 1968), affg. in part and revg. in part T.C. Memo. 1965-246; Estate of Temple v. Commissioner, 67 T.C. 143, 162 (1976).

Moreover, by the time the returns were filed, the fraudulent acts and omissions had already occurred.

In assessing petitioner's offer of proof, we have considered the testimony of Lipton and Timbie given in June 1994 in relation to Ms. Barth's innocent spouse claim.  Petitioner was present and objected to questions to Timbie concerning the records that he had examined.  After those objections were overruled, Timbie testified that he worked primarily from schedules prepared by Lipton and Onofrio and recommended the statements attached to the tax returns with respect to alleged loans.  Timbie did not see any loan documents.  Although Onofrio testified during criminal proceedings against petitioner, and petitioner was advised on April 4, 1995, to submit Onofrio's prior testimony as part of his offer of proof, petitioner failed to do so.

The record is replete with clear and convincing evidence that petitioner underpaid his tax in each of the years in issue, and those underpayments are due to fraud.

On consideration of the entire record,

Respondent's motion to dismiss for lack of prosecution will be granted, and decision will be entered for respondent.