T.C. Memo. 2007-291


UNITED STATES TAX COURT


RICHARD M. DOWNING, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6452-05L.          Filed September 24, 2007.


B.J. Hickert and Seamus P. Smith, for petitioner.

Charles M. Berlau and Michael L. Boman, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge:  Pursuant to sections 6320(c) and 6330(d), petitioner seeks review of respondent's determination sustaining the filing of a Federal tax lien with respect to petitioner's 1995 and 1999 income tax.[1]

---

[1] Unless otherwise indicated, section references are to the
(continued...)

## FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate herein by this reference. When he petitioned the Court, petitioner resided in Kansas.

Petitioner's 1995 Tax Reporting

On August 5, 1995, petitioner wed Astrid Downing in what was to prove a short-lived marriage (they divorced in 1997). About 10 days after the wedding, he and Astrid Downing moved to Singapore, where he was employed as senior vice president for a U.S. company, Seagate Technology, Inc.

Petitioner's and Astrid Downing's 1995 Federal income tax reporting, and the IRS's handling of their accounts, is shrouded in mystery, confusion, and error. Although Astrid Downing filed her 1995 return (prepared by H&R Block) on time, for reasons not disclosed by the record she erroneously listed her filing status as "Single", provided a California address (even though petitioner claims she then resided in Singapore with him), and used the name "Astrid M Stevenson", notwithstanding that her name (according to petitioner's testimony) was Astrid Downing. On her 1995 return, Astrid Downing claimed a $1,940 overpayment. On May 6, 1996, respondent refunded this amount to her.

---

[1](...continued)
Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

On June 26, 1996, respondent received petitioner's application for an extension of time to file his 1995 income tax return. Petitioner sought, and respondent granted, an extension until January 30, 1997, on the ground that his tax home was in a foreign country and he expected to qualify for special tax treatment. Although petitioner represented on the application, under penalties of perjury, that he was including a $39,500 income tax payment, he actually included only $25,000 (the $25,000 payment).

Respondent initially posted the $25,000 payment to petitioner's 1995 individual account. According to respondent's records, however, petitioner still had not filed his 1995 return as of September 29, 1997, when petitioner and Astrid Downing filed their 1996 joint return, which reflected an underpayment. Respondent transferred the $25,000 payment to petitioner's and Astrid Downing's 1996 joint account, used a portion of it to cover the 1996 underpayment, and refunded the $21,612 balance to petitioner and Astrid Downing, who both endorsed the refund check.

In the meantime, petitioner's accountants, Ernst & Young L.L.P. (Ernst & Young), had prepared for petitioner various versions of his 1995 tax return. One version was a married filing separate return, which showed total tax of $77,017 for petitioner individually, with $13,635 owed after giving effect to

prior payments, including the $25,000 payment. Ernst & Young also prepared a joint return for petitioner and Astrid Downing (the 1995 joint return), which showed total joint tax of $75,647 for petitioner and Astrid Downing, with $6,087 owed after giving effect to prior payments, including the $25,000 payment. At some point, Ernst & Young also prepared a Form 1040X, Amended U.S. Individual Income Tax Return, purporting to amend the "Single" return that Astrid Downing had filed for 1995 and to claim filing status of married filing joint return for Astrid Downing and petitioner. The amounts of income, deductions, credits, taxes, and payments shown on the Form 1040X are substantially identical to those shown on the 1995 joint return previously described. On line 16, the Form 1040X shows $8,728 as the "Amount of tax paid with original return plus additional tax paid after it was filed". Petitioner contends that he and Astrid Downing executed this Form 1040X and filed it sometime in October 1996. Respondent's records contain no indication that any 1995 joint return for petitioner and Astrid Downing was ever filed or processed. The record in this case includes no copy of any 1995 joint return that is signed by Astrid Downing.

On October 30, 1996, respondent received payment of $8,728, which appears to be made up of the $6,087 tax liability shown on the 1995 joint return plus $701 of interest and $1,940 in repayment of Astrid Downing's May 6, 1996, refund of this same

amount.  The payment was accompanied by a payment voucher indicating that the payment was for Astrid Downing's and petitioner's 1995 joint account.  The payment voucher lists Astrid Downing as the primary taxpayer and petitioner as spouse. Respondent's transcript indicates that the $8,728 payment was posted to Astrid Downing's 1995 account as a "PAYMENT WITH RETURN".

2001 Correspondence About 1995 Returns

By notice dated March 12, 2001, and addressed to petitioner, respondent indicated that petitioner had not filed his 1995 return and requested petitioner to provide information. Petitioner responded by letter dated April 11, 2001, stating that he had been living and working in Singapore in 1995 and that Ernst & Young "was responsible for my tax returns."  He stated that "my 1995 return" had been "done and submitted by" Ernst & Young and that an amended return had also been filed.  The letter stated that petitioner was enclosing both returns.  Included with the letter were:  (1) An unsigned copy of the previously described 1995 married filing separate return for petitioner; and (2) a copy of the previously described 1995 joint amended return for petitioner and Astrid Downing, unsigned except for the signature of petitioner's tax return preparer, dated October 15,

1996.[2]  In this correspondence, petitioner listed an address in New Hampshire.

In response, respondent sent a letter dated October 22, 2001, to petitioner's New Hampshire address.  The letter was addressed to petitioner and a former spouse, Ruby L. Downing, but the heading and caption of the letter referenced only petitioner's individual Social Security number.  In the letter, respondent advised that the IRS had received "your" 1995 Federal income tax return but that it was not signed.  The letter requested that an enclosed declaration be signed and returned to respondent within 20 days so the 1995 return could be processed.

In a letter to the IRS, dated November 15, 2001, petitioner responded from the New Hampshire address that he was not signing the declaration because he and Ruby L. Downing were not married in 1995 and did not file a return in 1995.  He stated that he had previously supplied respondent a copy of "my 1995 return".

Summary Assessment of Petitioner's 1995 Income Tax

In the meantime, having received no response from petitioner within the 20-day deadline stated in respondent's October 22, 2001, letter, respondent had summarily assessed against petitioner the $77,017 tax reported on the copy of petitioner's

_____

[2] Also included with petitioner's Apr. 11, 2001, letter was a copy of Notice CP-515M, Information About Your Return, completed and signed by petitioner under penalties of perjury. On the Notice CP-515M, petitioner indicated that his filing status for 1995 was married filing jointly.

1995 married filing separate return included with his April 11, 2001, letter, plus interest and penalties.  By notice dated November 12, 2001, respondent advised petitioner that, for his 1995 tax year, he had a balance due of $84,254, after giving credit for previous payments (except for the $25,000 payment, which, as previously described, had been applied partly to petitioner's and Astrid Downing's 1996 joint tax underpayment, with the balance having been refunded to petitioner and Astrid Downing).[3]

## Petitioner's 1999 Tax Return

On September 3, 2002, the IRS received petitioner's delinquent 1999 Federal income tax return, showing his address as being in Idaho (the Idaho address).  Petitioner's 1999 return showed that he owed $16,508, but no payment was remitted.  The IRS assessed the tax shown on the return, plus interest and penalties, and by notice dated November 11, 2002, advised petitioner that he owed $27,318 on his 1999 account.

## First Power of Attorney

On November 4, 2002, respondent received from petitioner Form 2848, Power of Attorney and Declaration of Representative,

---

[3] On Aug. 30, 2002, petitioner delinquently filed his Federal income tax returns for 2000 and 2001, showing overpayments of $11,102 and $14,893, respectively.  The record does not reveal what address petitioner used on these returns.  In September 2002, respondent applied these overpayments against petitioner's 1995 liability.

authorizing accountants L. Troy Clayton and Terry L. Roe to represent petitioner with respect to his 1995 through 2002 Federal income tax. The Form 2848 lists the New Hampshire address for petitioner and the Idaho address for these accountants. Pursuant to the terms of the Form 2848, original notices and other written communications were to be sent to petitioner and copies to Mr. Clayton.

Notice of Intent To Levy and Notice of Levy

On April 22, 2003, respondent sent to petitioner, by certified mail to the Idaho address, a final notice of intent to levy and notice of right to a hearing for taxable years 1995 and 1999. Petitioner did not receive this notice during 2003. Neither he nor his accountants responded to this notice.

On or about February 20, 2004, respondent mailed a notice of levy for 1995 and 1999 to Charles Schwab & Co. and received in response $161, which was applied to petitioner's 1995 liability.

Notice of Federal Tax Lien Filing

On March 4, 2004, respondent sent to petitioner, by certified mail to the Idaho address, a notice of Federal tax lien filing and right to a hearing for taxable years 1995 and 1999.

Petitioner's Request for Hearing and Second Power of Attorney

By letter dated March 17, 2004, petitioner responded to the March 4, 2004, notice of Federal tax lien filing and right to a hearing, requesting a hearing. The letter states: "The taxpayer

also received an earlier Notice of Levy against funds on deposit with Charles Schwab." The letter is signed by Certified Public Accountant Stuart Douthett, with an address in Kansas. Enclosed with the letter was a Form 2848, authorizing Stuart Douthett and Harold Wolgast to represent petitioner.

Respondent treated this letter as a request for an equivalent hearing with respect to the notice of levy and as a timely appeal from the notice of tax lien.

Appeals Office Hearing

On July 9, 2004, petitioner's case was received in respondent's Appeals Office in Wichita, Kansas. The case was initially assigned to Appeals Officer Dee Dugan.

By letter dated July 14, 2004, and sent to the attention of Appeals Officer Dugan, Mr. Douthett stated that in August 1996 petitioner had filed a separate 1995 return and that in October 1996 "an amended return was filed (technically amending the return of Astrid M. Downing) to file a joint return." Consequently, the letter asserted, "it appears that the statute of limitations should have expired prior to the first notification received by the taxpayer in 2001." In addition, the letter asserted that petitioner had not been given proper credit for the $25,000 payment that he had included with his request for a filing extension with respect to his 1995 return.

Appeals Officer Dugan began investigating this matter but retired before making any final determination. In an undated

file memorandum addressed to "Greg", Appeals Officer Dugan stated that she was "trying to get rid of a really messy CDP [collection due process case] as I don't want anybody else to have to spend time unraveling the mystery."  In this file memorandum, Appeals Officer Dugan recounted petitioner's explanation that in August 1996 he had filed a 1995 married filing separate return that showed a balance due, but that in October 1996, petitioner and Astrid Downing had filed an amended return converting their prior 1995 returns to joint filing status and had paid the $8,728 balance shown on this amended joint return.  Appeals Officer Dugan's file memo stated:  "I happen to believe the taxpayer." The file memo concluded:  "If I post the amended return along with the payments the taxpayer made, there is no balance due on 1995".

In a letter dated November 23, 2004, and addressed to petitioner's representative Harold Wolgast, Appeals Officer Dugan reiterated her belief that petitioner and Astrid Downing had filed a joint amended 1995 return.  She stated:  "I do not know what the reason is for the return not being processed, but I will request that it be input as of 10/30/1996."

On December 9, 2004, petitioner's case was transferred to Appeals Officer Troy Talbott, who continued to investigate petitioner's case and to communicate in writing and by telephone with petitioner's representative and with petitioner.  According to the Appeals Office case activity records, at various times

Appeals Officer Talbott requested petitioner to provide
additional information, including a statement from Astrid Downing
that she had intended to file a 1995 joint return with
petitioner.  Insofar as the record reveals, petitioner never
provided such a statement.

Ultimately, Appeals Officer Talbott determined that no joint
return had been filed.  According to his case activity records,
however, Appeals Officer Talbott offered "to abate the 1995 FTF
[failure to file] penalty, apply the $8,728 from excess
collections and assume that a [married filing separate] return
was filed as of 10/30/96."  Petitioner rejected this offer.[4]
Nevertheless, the final notice of determination, dated March 8,
2005, adopted this approach, while sustaining the notice of tax
lien.[5]  An attachment to the notice of determination, "Attachment
--Letter 3193, Notice of Determination", states in pertinent
part:

> The administrative file includes a Form 1040 for 1995,
> which was not signed by either the taxpayer or the
> preparer, showing a tax liability of $77,017, claiming

---

[4] The parties also continued to disagree over the treatment
of the $25,000 payment that petitioner had submitted with his
1995 filing extension request.  Respondent's records showed that
$21,612 of this payment had been refunded to petitioner and
Astrid Downing in 1996.  Petitioner proposed that half this
refund be applied to his 1995 tax.  Appeals Officer Talbott
rejected this offer but agreed to abate interest on petitioner's
1995 tax liability to the extent associated with a $25,000
payment.

[5] Also on Mar. 8, 2005, respondent issued an "Equivalent
Hearing" decision letter concluding that the levy with respect to
petitioner's 1995 and 1999 tax was appropriate.

* * * a credit of $25,000 that was paid with Form 4868
* * *.  The IRS stamped the page one of the Form 1040
as being received on May 17, 2001, and processed the
return without a signature.  The Form 1040 shows that
the taxpayer was filing as married filing separate, and
that his spouse was Astrid Downing. * * *

        *    *    *    *    *    *    *

The administrative file includes an amended tax return
which was signed by the taxpayer and the preparer on
October 25, 1996.  The amended tax return shows that
the taxpayer is electing to file a joint income tax
return with Astrid Downing, however it was not
processed by the IRS.

        *    *    *    *    *    *    *

All legal and procedural requirements are concluded to
have been met in this case.

        *    *    *    *    *    *    *

The transcripts show that the taxpayer was given credit
for $25,000 on the 1996 tax module, and that a refund
was issued to the taxpayer's last known address.  The
taxpayer has not established that an amended tax return
for 1995 electing to file jointly was filed within
three years of the last date prescribed by law for
filing of the separate return or returns, without
taking into account any extension of time granted to
either spouse.

It is my determination that the IRS allow a credit of
$8,728.00 for 1995, abate the failure to file penalty
for 1995 and abate the interest and failure to pay
penalty associated with the $25,000.00 payment from the
date it was received, June 30, 1996, until the date the
IRS issued a notice of demand for payment for 1995
which was on November 12, 2001.

OPINION

A.    Statutory Framework

Section 6321 imposes a lien in favor of the United States on all property and property rights of a person who is liable for and fails to pay tax after demand for payment has been made. The lien arises when assessment is made and continues until the assessed liability is paid. Sec. 6322. For the lien to be valid against certain third parties, the Secretary must file a notice of Federal tax lien; within 5 business days thereafter, the Secretary must provide written notice to the taxpayer. Secs. 6320(a), 6323(a). Within 30 days commencing after the end of the 5 business days, the taxpayer may request an administrative hearing before an Appeals officer. Sec. 6320(b)(1); sec. 301.6320-1(c)(1), Proced. & Admin. Regs.

Similarly, section 6330 provides for notice and opportunity for a hearing before the IRS may levy upon the property of any person. To be entitled to an administrative hearing under section 6330, the person must request the hearing within the 30-day period commencing the day after the date of the pre-levy notice. Sec. 6330(a)(3)(B); sec. 301.6330-1(b)(1), Proced. & Admin. Regs.

Once the Appeals officer issues a notice of determination, the taxpayer may seek judicial review in this Court. Secs. 6320(c), 6330(d)(1). If the validity of the underlying tax

liability is properly at issue, we review that issue de novo.
See Sego v. Commissioner, 114 T.C. 604, 609-610 (2000).  Other
issues we review for abuse of discretion.  Id.

B.    Petitioner's Challenge to the Notice of Determination

Petitioner challenges respondent's final notice of
determination with respect to the notice of Federal tax lien
filing for his 1995 and 1999 tax years.  Petitioner contends that
respondent's assessment of his 1995 income tax was time barred
because he and Astrid Downing filed their 1995 joint amended
return in October 1996 but assessment did not occur until 2001,
well beyond the expiration of the 3-year limitations period of
section 6501(a).[6]  Respondent contends that section 6330(c)(2)(B)
precludes petitioner from raising this issue in this proceeding.

1.   Limitation on Challenging Underlying Liability

Section 6330(c)(2) prescribes the matters that a person may
raise at an Appeals Office hearing, including spousal defenses,
challenges to the appropriateness of the Commissioner's intended

---

[6] Petitioner does not dispute the assessment of his 1999
income tax, which was based on amounts reported on but not paid
with his 1999 return.  In his petition, petitioner's prayer for
relief included a request that the Court order respondent to
offset any unpaid balance on his 1999 account by application of
certain amounts that respondent has allegedly collected from
petitioner and to refund certain remaining amounts.  Petitioner
has not raised this claim for relief in his trial memorandum or
on brief.  We deem petitioner to have abandoned any such claim
for relief.  In any event, this Court lacks jurisdiction in a
collection review proceeding to order a refund or credit of tax.
Greene-Thapedi v. Commissioner, 126 T.C. 1 (2006).

collection action, and possible alternative means of collection. At the hearing, the person may challenge the existence or amount of the underlying tax liability only if the person did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B); see Sego v. Commissioner, supra at 609; Goza v. Commissioner, 114 T.C. 176, 180-181 (2000). The regulations define a prior opportunity to dispute an underlying tax liability to include an opportunity for a conference with the Appeals Office that was offered either before or after the assessment of the liability. Sec. 301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs. A taxpayer who previously received a notice under section 6330 with respect to the same tax and tax periods and did not request a hearing with respect to that earlier notice has already had an opportunity to challenge the existence or amount of the underlying liability. Sec. 301.6320-1(e)(3), Q&A-E7, Proced. & Admin. Regs.; see Lewis v. Commissioner, 128 T.C. 48 (2007); Bell v. Commissioner, 126 T.C. 356, 358 (2006).

Respondent contends, and petitioner does not dispute, that pursuant to this Court's precedents, petitioner's limitations period argument constitutes a challenge to his underlying 1995

liability.[7]  See <u>Hoffman v. Commissioner</u>, 119 T.C. 140, 145
(2002); <u>Boyd v. Commissioner</u>, 117 T.C. 127, 130 (2001).

Petitioner received no notice of deficiency with respect to
his 1995 or 1999 tax.  Respondent contends, however, that
petitioner is not entitled to dispute his underlying liabilities
in this proceeding because petitioner failed to take advantage of
his prior opportunity to do so when, on April 22, 2003,

---

[7] While relying upon these precedents, respondent also
expresses disagreement with them, stating:

> It is respondent's position that the issues raised
> by petitioner's contentions (involving the expiration
> of statutes of limitations and application of payments
> and credits) are more properly characterized as issues
> relating to the unpaid tax in section 6330(c)(2)(A),
> and should be reviewed for an abuse of discretion.
> Nevertheless, respondent acknowledges that this Court
> has held otherwise.

The administrative record shows that the Appeals Office not
only considered petitioner's challenges but actually adjusted
petitioner's liability downwards in response to the issues he
raised.  Nowhere in the administrative record is there any
allusion to the sec. 6330(c)(2)(B) limitation.  It would appear
that the administrative hearing was conducted and the notice of
final determination promulgated in adherence to respondent's
espoused position that the issues petitioner raised were not
properly characterized as challenges to the underlying liability.
In these circumstances, it might be questioned whether respondent
has effectively waived the limitation imposed by sec.
6330(c)(2)(B).  Cf. <u>Behling v. Commissioner</u>, 118 T.C. 572, 578-
579 (2002) (holding that the Appeals Office's consideration of
the taxpayer's challenge to his underlying liability, in a
situation where the taxpayer had received a statutory notice of
deficiency, did not result in a waiver by the Commissioner of the
sec. 6330(c)(2)(B) limitation).  Petitioner, however, does not
contend that respondent has waived the sec. 6330(c)(2)(B)
limitation.  Accordingly, we give this issue of waiver no further
consideration.

respondent sent him a final notice of intent to levy and right to a hearing for taxable years 1995 and 1999. Petitioner argues that he never received the April 22, 2003, notice, because it was sent to his accountants' Idaho address "which was not, and never had been, the petitioner's address." Thus, petitioner argues, the final notice of intent to levy was invalid and offered him no prior opportunity to contest his underlying liability. For the reasons discussed below, we agree with petitioner.

### 2. Petitioner's Last Known Address

Section 6330(a)(1) requires that, before making a levy, the Secretary notify the taxpayer in writing of the right to a hearing. Section 6330(a)(2) provides three options for the time and method of such a notice. The notice must be either: (1) Given in person; (2) left at the taxpayer's dwelling or usual place of business; or (3) sent by certified or registered mail, return receipt requested, to the taxpayer's last known address. Sec. 6330(a)(2).

Regulations under sections 6330 and 6331 cross-reference section 301.6212-2, Proced. & Admin. Regs., to define "last known address". Secs. 301.6330-1(a)(1), 301.6331-2(a)(1), Proced. & Admin. Regs. As a general rule, a taxpayer's last known address is "the address that appears on the taxpayer's most recently filed and properly processed Federal tax return, unless the Internal Revenue Service (IRS) is given clear and concise

notification of a different address." Sec. 301.6212-2(a), Proced. & Admin. Regs.

On September 3, 2002, the IRS received petitioner's 1999 return, showing his accountants' Idaho address. For reasons not revealed by the record, respondent did not process this return until November 11, 2002.

In the meantime, on November 4, 2002, respondent had received petitioner's Form 2848, instructing that original notices and other written communications be sent to petitioner at the New Hampshire address and copies be sent to his accountant, Mr. Clayton, at the Idaho address.

Respondent contends that notwithstanding his receipt of petitioner's Form 2848 on November 4, 2002, petitioner's last known address was his accountants' Idaho address as shown on petitioner's 1999 return, which was processed on November 11, 2002, because this was the last return that was "filed and properly processed" before April 22, 2003 (the date on which respondent sent the notice of intent to levy to the Idaho address).[8] Respondent seems to suggest that respondent's processing of petitioner's 1999 return about a week after

_____

[8] On brief, respondent observes in a footnote that petitioner also listed the Idaho address on his timely filed 2002 Federal income tax return. Respondent does not contend, however, that the address shown on petitioner's 2002 return should establish his last known address as of Apr. 22, 2003, ostensibly because this 2002 return was not processed until May 5, 2003. Accordingly, we give this issue no further consideration.

receiving the Form 2848 caused petitioner's last known address to revert to the Idaho address shown on that return. We disagree.

In the first instance, respondent has offered no explanation why petitioner's 1999 return, which the IRS received on September 3, 2002, was not processed until November 11, 2002. According to the Commissioner's revenue procedure, "a return will be considered properly processed after a 45-day processing period which begins the day after the date of receipt of the return by the Internal Revenue Service Center." Rev. Proc. 2001-18, sec. 5.02(1), 2001-1 C.B. 708, 710. It appears that this 45-day processing period for petitioner's 1999 return would have expired before respondent received the Form 2848. Hence, pursuant to the revenue procedure, it would appear that petitioner's 1999 return should be considered as having been processed <u>before</u> respondent received the Form 2848. Assuming, then, that petitioner's last known address before he filed the Form 2848 was the Idaho address as shown on his 1999 return, Form 2848 provided respondent "clear and concise" notification of a change of address to the New Hampshire address. See <u>Hunter v. Commissioner</u>, T.C. Memo. 2004-81. Petitioner's New Hampshire address thus became his last known address, notwithstanding respondent's belated processing of petitioner's 1999 return.

More fundamentally, we reject respondent's suggestion that pursuant to section 301.6212-2(a), Proced. & Admin. Regs., "clear

and concise notification" of an address different from that appearing on the taxpayer's most recently filed and properly processed Federal tax return is effective only if made <u>after</u> the tax return is processed.  The relevant question is not whether the IRS received the change of address notification before or after the last-filed return was processed.  Rather, "what is of significance is what respondent knew at the time the * * * notice was issued * * *, and attributing to respondent information which respondent knows, or should know, with respect to a taxpayer's last known address, through the use of its computer system." <u>Abeles v. Commissioner</u>, 91 T.C. 1019, 1035 (1988).  If the IRS has become aware of a change of address, it may not rely on the address listed on the last-filed return but must exercise "reasonable diligence in ascertaining the taxpayer's correct address".  <u>Pyo v. Commissioner</u>, 83 T.C. 626, 636 (1984); see <u>Buffano v. Commissioner</u>, T.C. Memo. 2007-32.

Upon receiving petitioner's Form 2848 on November 4, 2002, respondent should have known, with the exercise of reasonable diligence, that the address shown on the Form 2848 superseded the Idaho address shown on petitioner's 1999 return, which respondent had received 2 months earlier.  As we stated in somewhat analogous circumstances in <u>Hunter v. Commissioner</u>, <u>supra</u>, "respondent bears the burden of conforming his actions to the knowledge at his disposal."  Respondent failed to do so.  We

conclude and hold that respondent failed to send the final notice of intent to levy to petitioner's last known address and that the notice was therefore invalid.  See Buffano v. Commissioner, supra.

    3.   Whether To Impute to Petitioner Knowledge of the Notice of Intent To Levy

On reply brief, respondent suggests that it is ultimately irrelevant whether the final notice of intent to levy was mailed to petitioner's last known address because "it was, in fact, actually received by petitioner's attorney-in-fact in sufficient time to meet the deadline for filing a timely appeal with the Appeals office."  In support of this contention, respondent cites St. Joseph Lease Capital Corp. v. Commissioner, 235 F.3d 886 (4th Cir. 2000), affg. T.C. Memo. 1996-256, and Estate of Citrino v. Commissioner, T.C. Memo. 1987-565.  In each of those cases, a statutory notice of deficiency was held valid even though not mailed to the taxpayer's last known address.  In each of those cases, however, the notice was obtained by the taxpayer or the attorney, who then filed a timely petition.  By contrast, neither petitioner nor his accountant ever responded to the final notice of intent to levy.

Petitioner testified credibly that he received no copy of the final notice in 2003 and that if he had received it, he would have requested a hearing.  Although the evidence suggests that petitioner's Idaho accountants received the final notice of

intent to levy, there is no evidence that his Idaho accountants forwarded it to petitioner or discussed it with petitioner during 2003, or that petitioner otherwise actually received notification of the final notice in time to request a section 6330 hearing. Pursuant to the Form 2848 that respondent received on November 4, 2002, petitioner's Idaho accountant, Mr. Clayton, was supposed to receive only copies of notices; the original notices were supposed to have been sent directly to petitioner. Mr. Clayton might have been justified in thinking that this is what happened. By the time petitioner requested a hearing in March 2004, he was being represented by other accountants in Kansas.

In these circumstances, we decline to impute to petitioner knowledge of the final notice of intent to levy. See Calderone v. Commissioner, T.C. Memo. 2004-240. We conclude and hold that petitioner had no prior opportunity to dispute his underlying income tax liability. Accordingly, we conclude that section 6330(c)(2)(B) does not preclude petitioner from challenging his underlying liability in this proceeding.

4.  Whether Petitioner and Astrid Downing Filed a Joint
    1995 Return

As previously discussed, petitioner claims that the assessment of his 1995 tax was made more than 3 years after he and Astrid Downing filed a joint return in 1996 and consequently is time barred pursuant to section 6501(a). For the reasons described below, we conclude that petitioner never filed his 1995

return.  Accordingly, the assessment was not time barred.  See sec. 6501(c)(3).

In the final notice of determination, respondent's Appeals Office treated petitioner as having filed his 1995 married filing separate return on October 30, 1996, for purposes of abating penalties and interest and reallocating certain of petitioner's payments to his 1995 account.  Although the notice of determination does not state the rationale for these downward adjustments, the administrative record reveals that the Appeals officer recommended these adjustments on the basis of an assumption that petitioner had filed his 1995 married filing separate return in October 1996.

Notwithstanding any contrary implication that might arise from this aspect of the final notice of determination, the parties now agree that petitioner filed no 1995 married filing separate return in 1996.  Petitioner states on brief (contrary to his prior representations to the IRS and contrary to his position at trial) that the 1995 married filing separate return "had never been filed."  Instead, petitioner insists that he and Astrid Downing filed a joint 1995 return in October 1996.

A tax return is generally invalid unless signed under penalties of perjury.  Sec. 6065.  Returns are required to be signed in accordance with forms or regulations prescribed by the Secretary.  Sec. 6061.  The applicable regulations require:

"Each individual * * * shall sign the income tax return required to be made by him, except that the return may be signed for the taxpayer by an agent who is duly authorized in accordance with paragraph (a)(5) or (b) of §1.6012-1 to make such return."  Sec. 1.6061-1(a), Income Tax Regs.  A judicially crafted exception to this general rule holds that if an "income tax return is intended by both spouses as a joint return, the absence of the signature of one spouse does not prevent their intention from being realized."  Estate of Campbell v. Commissioner, 56 T.C. 1, 12 (1971); see Olpin v. Commissioner, 270 F.3d 1297, 1301 (10th Cir. 2001), affg. T.C. Memo. 1999-426.

There is no indication in respondent's records that petitioner and Astrid Downing ever filed any 1995 joint return or that respondent ever processed any such joint return.  Petitioner has introduced into evidence copies of two different versions of a Form 1040X that he alleges he and Astrid Downing jointly filed in October 1996.[9]  Neither version bears Astrid Downing's signature.[10]  Although each version shows the signature of a tax

---

[9] Petitioner does not contend that he and Astrid Downing ever filed the original joint return that Ernst & Young prepared but only the Form 1040X purporting to amend Astrid Downing's "Single" 1995 return to claim joint filing status.

[10] One version is a copy as enclosed in petitioner's Apr. 11, 2001, letter to the IRS and shows the signature only of the tax preparer, dated Oct. 15, 1996.  The other version, dated Oct. 25, 1996, shows the signatures of both petitioner and the tax preparer.  The two versions are otherwise substantially identical, although the Oct. 15, 1996, version appears to contain
(continued...)

preparer, petitioner does not contend, and the evidence does not show, that the preparer's signature qualifies as the signature of a duly authorized agent for Astrid Downing pursuant to the regulations.

Petitioner's testimony regarding the circumstances of his purported filing of his 1995 income tax return was vague and inconsistent; conspicuously absent from his testimony was any convincing explanation of how or when Astrid Downing allegedly signed a joint return. Petitioner did not call Astrid Downing as a witness and has otherwise offered no credible evidence to establish that Astrid Downing ever intended to file a 1995 joint return with him or that she even tacitly consented to the filing of a joint return for 1995. Astrid Downing's intent in this regard is made more problematic by the undisputed fact that before the amended 1995 joint return was purportedly filed, she had filed a "Single" return for 1995 under a name other than her married name and listed an address other than petitioner's Singapore address. Petitioner has failed to persuade us that Astrid Downing ever intended to file a 1995 joint return with him.

---

[10](...continued)
additional forms and schedules. Petitioner has not adequately explained how these two versions came about or why he included the Oct. 15, 1996, version in his Apr. 11, 2001, correspondence with the IRS but now appears to claim the Oct. 25, 2001, version as the relevant one.

The copies of the incompletely executed Form 1040X, purporting to amend Astrid Downing's single 1995 return and claim joint filing status for petitioner and Astrid Downing, show $8,728 as "Amount of tax paid with original return plus additional tax paid after it was filed".  Respondent's records show that this amount was posted to Astrid Downing's 1995 account as a "PAYMENT WITH RETURN".[11]  Petitioner relies upon this entry as establishing that the 1995 return was filed and processed by the IRS.  We disagree.  At most, this entry might suggest that a joint return was tendered with payment and that an IRS employee accepted the payment.  Such action by an IRS employee, however, would not waive the statutory requirements for a valid return. See Lucas v. Pilliod Lumber Co., 281 U.S. 245 (1930); Olpin v. Commissioner, supra at 1301; Smart v. Commissioner, T.C. Memo. 1987-279; Wallace v. Commissioner, T.C. Memo. 1975-133.

Petitioner places great weight on the preliminary assessments of Appeals Officer Dugan, who first handled petitioner's Appeals hearing.  In an undated internal memo and in a letter to petitioner's representative Appeals Officer Dugan stated that she believed, on the basis of her preliminary investigation, that petitioner and Astrid Downing had filed a

---

[11] In the final notice of determination, the Appeals Office concluded that petitioner should be given credit for the $8,728 payment.

joint amended return in October 1996, as petitioner claimed.[12] When petitioner's case was eventually transferred to Appeals Officer Talbott, however, he was unable, after investigation, to establish that Astrid Downing had signed or had intended to file any joint return. The administrative record indicates that Appeals Officer Talbott requested petitioner to provide a statement from Astrid Downing that she had intended to file a joint return. Insofar as the record reveals, petitioner never provided such a statement. Ultimately, the final determination reflected Appeals Officer Talbott's conclusion that petitioner and Astrid Downing never filed a valid 1995 joint return. On the

[12] At trial, respondent objected to admitting these two documents into evidence on the grounds that "they are hearsay. They are the opinions of a lower level IRS agent. They are not the position of the Service and not binding on the Service." The Court provisionally admitted the documents into evidence subject to respondent's right to renew his objections on brief. On brief, respondent renews his objections, but on different grounds than asserted at trial. On brief, respondent does not assert any hearsay objection; we deem respondent to have waived any such objection. In any event, as shown by the discussion in the text, we do not rely upon these documents to prove the truth of the matters asserted therein; moreover, we do not rely upon Appeals Officer Dugan's conclusions expressed in these documents and do not view them as binding upon the IRS. On brief, respondent also objects that admission of these documents into evidence is contrary to Fed. R. Evid. 602 and 701. We disagree. Fed. R. Evid. 602, which limits admissible testimony to matters as to which the witness has personal knowledge, is not germane, inasmuch as the documents in question do not represent testimony of a witness. Similarly, Fed. R. Evid. 701, which relates to opinion testimony by lay witnesses, is not germane. Accordingly, we overrule respondent's new and renewed evidentiary objections to Exhibits 31-P and 32-P.

basis of all the evidence in the record, we must concur with this conclusion.

###### 5.  Summary Assessment of Petitioner's 1995 Tax

This does not end the matter, however, for in seeking to deflect petitioner's limitations period argument, respondent now contends, apparently for the first time in this proceeding, that petitioner filed his 1995 married filing separate return in April 2001, when petitioner included in correspondence to the IRS an unsigned copy of his 1995 married filing separate return (along with a copy of a 1995 joint amended return signed only by the preparer).[13]

In response to this argument, petitioner contends that in his April 2001 correspondence, he admitted only the liability shown on the copy of his and Astrid Downing's 1995 amended joint return included therewith and that he did not admit the liability shown on the unsigned copy of his 1995 married filing separately return.  Petitioner contends that respondent improperly assessed his 1995 tax on the basis of the unsigned copy of his 1995 married filing separate return without first issuing the required statutory notice of deficiency.  See sec. 6213(a).

Pursuant to section 6201(a)(1), the Secretary is authorized to "assess all taxes determined by the taxpayer or by the

---

[13] Respondent does not contend, however, that we should modify those aspects of the final notice of determination that treated petitioner as having filed a 1995 married filing separate return in October 1996.

Secretary as to which returns * * * are made under this title."
Respondent cites, and we have discovered, no authority to suggest
that the unsigned copy of petitioner's 1995 married filing
separate return should be considered a valid return for purposes
of section 6201(a).  Cf. sec. 6065 (generally requiring any
return to contain or be verified by a written declaration that it
is made under penalties of perjury); Dixon v. Commissioner, 28
T.C. 338, 348 (1957) ("The respondent does not cite any decision
where * * * it was held that an unsigned and otherwise unverified
duplicate copy of a purported income tax return was held to be
the return required by statute and was to be given effect as
such").  An unsigned return "is no return at all."  Vaira v.
Commissioner, 52 T.C. 986, 1005 (1969), affd. on this issue,
revd. and remanded on other grounds 444 F.2d 770 (3d Cir. 1971);
see Borgeson v. United States, 757 F.2d 1071 (10th Cir. 1985).  A
signature on a letter attached to the return cannot be considered
an imputed signature on the return itself.  Richardson v.
Commissioner, 72 T.C. 818, 824 (1980).  Moreover, even if we were
to assume, arguendo, that the IRS accepted petitioner's unsigned
copy of the 1995 married filing separate return and processed it,
such acceptance would not cure an invalid return.  See Olpin v.
Commissioner, 270 F.3d at 1301; Dixon v. Commissioner, supra at
347.

Pursuant to the deficiency procedures, the Commissioner generally is precluded from assessing a deficiency until he has mailed the taxpayer a notice of deficiency and the period for filing a timely petition in this Court has expired. See sec. 6213(a). Respondent issued no notice of deficiency to petitioner.

Section 6330(c)(1) requires, in the case of any hearing conducted with respect to a proposed collection action, that the Appeals officer "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." Pursuant to this provision, the Appeals officer must verify, among other things, that tax was properly assessed. Cox v. Commissioner, 126 T.C. 237, 255 (2006). The verification requirement may be met where the Appeals officer secures formal or informal transcripts showing that the tax was properly assessed and that the taxpayer had been properly notified of the assessment. See id.; see also Jones v. Commissioner, 338 F.3d 463, 466 (5th Cir. 2003) (the verification requirement was satisfied where an Appeals officer referred to a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, to determine that the IRS had followed legal and administrative procedures); Roberts v. Commissioner, 329 F.3d 1224, 1228 (11th Cir. 2003) (Form 4340 provides prima facie

evidence that the IRS has complied with its statutory duties), affg. 118 T.C. 365 (2002).

The final notice of determination notes without comment that the IRS processed a 1995 married filing separate Form 1040, U.S. Individual Income Tax Return, that was not signed by either petitioner or the preparer. The final notice of determination goes on to state summarily: "All legal and procedural requirements are concluded to have been met in this case." The final notice of determination does not, however, reveal the basis for this statement as it might pertain to the propriety of a summary assessment made on the basis of the unsigned copy of the 1995 married filing separate return; indeed, the administrative record does not show that the Appeals officer ever specifically considered the issue.[14] Respondent has offered no reasoned defense of his summary assessment of petitioner's 1995 tax. On

---

[14] As previously discussed, the Appeals officer assumed, for purposes of abating penalties and interest and reallocating certain payments, that petitioner filed a 1995 married filing separate return in October 1996. If we were to infer that the Appeals officer meant to assume that petitioner's 1995 married filing separate return was filed in October 1996 for all purposes, this might explain why the Appeals officer would not have felt it necessary to address whether summary assessment was properly made on the basis of the unsigned copy of petitioner's 1995 married filing separate return that the IRS received in 2001. If we were to indulge the assumption, however, that petitioner filed a 1995 married filing separate return in October 1996, then we would have to agree with petitioner that the assessment in 2001 was outside the 3-year limitations period of sec. 6501(a). As previously discussed, both parties now agree that petitioner filed no 1995 married filing separate return in 1996.

the basis of the record before us, we conclude that petitioner's 1995 tax was improperly assessed summarily without the issuance of a statutory notice of deficiency. Accordingly, we conclude and hold that the final notice of determination sustaining the notice of tax lien filing is invalid insofar as it pertains to petitioner's 1995 tax year. See Freije v. Commissioner, 125 T.C. 14, 35-36 (2005).

C.   "Equivalent Hearing" Decision Letter

If a person requests a hearing pursuant to section 6330 but the request is untimely (i.e., the hearing request is not made within the 30-day period commencing the day after the date of the pre-levy notice, see sec. 6330(a)(3)(B); sec. 301.6330-1(b)(1), Proced. & Admin. Regs.), the person is not entitled to a hearing but nevertheless may receive a so-called equivalent hearing. See Kennedy v. Commissioner, 116 T.C. 255, 262 (2001); secs. 301.6320-1(i)(1), 301.6330-1(i)(1), Proced. & Admin. Regs. At the conclusion of an "equivalent hearing", the Appeals Office does not issue a notice of determination but instead issues a decision letter, which generally includes the same information as a notice of determination. Secs. 301.6320-1(i)(2), Q&A-I5, 301.6330-1(i)(2), Q&A-I5, Proced. & Admin. Regs.

As previously discussed, petitioner did not timely request a hearing in response to the final notice of intent to levy, issued April 22, 2003, because it was not sent to his last known address

and he did not receive it.  Petitioner received an "equivalent hearing" decision letter regarding the levy.  An "equivalent hearing" decision letter, unlike a notice of determination, generally does not constitute a "determination" for purposes of section 6320 or 6330 and so does not provide the requisite basis for invoking this Court's jurisdiction under section 6320 or 6330.  See Moorhous v. Commissioner, 116 T.C. 263, 269-270 (2001); Kennedy v. Commissioner, supra; cf. Craig v. Commissioner, 119 T.C. 252 (2002) (holding that a decision letter issued in response to a timely request for a hearing provides the requisite jurisdictional basis under section 6330(d)(1)).

Petitioner has not properly placed before us any request to review the "equivalent hearing" decision letter as to the

proposed levy upon his property.[15]   Nevertheless, as previously discussed, we have held that the final notice of intent to levy, issued April 22, 2003, was invalid because respondent did not send it to petitioner's last known address.[16]

D.   Conclusion

Respondent's final determination sustaining the filing of the notice of Federal tax lien is not sustained insofar as it relates to petitioner's 1995 tax year.

---

[15] Petitioner's original petition, filed Apr. 5, 2005, broadly challenges respondent's assessment of his 1995 income tax and respondent's accounting for his payments on his 1995 and 1999 account but does not expressly mention either the notice of determination regarding the Federal tax lien or the decision letter with respect to the levy.  The petition as originally filed makes no express reference to sec. 6320 or 6330 or any other statutory basis for this Court's jurisdiction.  Contrary to Rule 331(b)(8), the petition as originally filed includes no copy of the notice of determination.  At the commencement of the trial, petitioner amended his petition to assert that he had requested IRS Appeals Office consideration "in response to a Notice of Federal Tax lien Filing and Your Right to a Hearing Under IRS 6320 regarding alleged liabilities for 1995 and 1999", and that on Mar. 8, 2005, respondent had issued the notice of determination concerning the filing of the Federal tax lien. Attached to the petition thus amended is a copy of said notice of determination.  In his opening brief and reply brief, petitioner states identically:  "This Tax Court proceeding is an appeal from a CDP Hearing that Petitioner requested in response to a Notice of Federal Tax Lien Filing issued by Respondent for an alleged 1995 income tax assessment."

[16] If petitioner had properly placed in issue any challenge to the equivalent hearing decision letter, our holding as to the invalidity of the final notice of intent to levy would have been relevant in deciding the proper basis for dismissal of this issue.  See Kennedy v. Commissioner, 116 T.C. 255, 260-261 (2001); Buffano v. Commissioner, T.C. Memo. 2007-32.

To reflect the foregoing,

An appropriate decision

will be entered.