T.C. Memo. 2015-199

UNITED STATES TAX COURT

BRADLEY C. REIFLER AND NANCY REIFLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18082-10.                    Filed October 13, 2015.

<u>Kevin M. Flynn</u>, for petitioners.

<u>Carina J. Campobasso</u> and <u>Erika B. Cormier</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court to redetermine deficiencies

respondent determined in their Federal income tax for years 2000 through 2005 as

[*2] well as accuracy-related penalties under section 6662 and additions to tax under section 6651(a)(1) and (2)[1] as follows:

| Year | Deficiency | Additions to tax Sec. 6651(a)(1) | Additions to tax Sec. 6651(a)(2) | Accuracy-related penalties Sec. 6662(a) | Accuracy-related penalties Sec. 6662(h) |
|------|-----------|-----------|-----------|-----------|-----------|
| 2000 | $4,215,759 | $905,546.56 | $1,006,162.85 | $159,514.40 | $1,367,274.80 |
| 2001 | 2,697,054 | --- | --- | 110,458.40 | 857,904.80 |
| 2002 | 1,665,561 | --- | --- | 67,699.40 | 392,000.00 |
| 2003 | 1,126,931 | 37,135.44 | 206,308.00 | 225,290.00 | --- |
| 2004 | 914,120 | --- | --- | 147,353.40 | 70,941.20 |
| 2005 | 1,092,913 | --- | --- | 182,072.40 | 73,020.40 |

The parties filed two stipulations of settled issues which resolved all the issues raised in the notice of deficiency except for the applicability of the additions to tax under section 6651(a)(1) (failure to timely file) for the 2000 and

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded to the nearest dollar.

[*3] 2003 tax years.[2] At trial petitioners conceded the applicability of the addition to tax for the 2003 tax year.

We decide the following issues:

1. whether a purported joint Federal income tax return for the 2000 tax year that included the signature of Mr. Reifler but not of Mrs. Reifler was a valid tax return.[3] We hold it was not;

2. whether petitioners are liable for the addition to tax under section 6651(a)(1) for the delay in filing their Federal income tax return for the 2000 tax year. We hold they are.

---

[2]Petitioners raised two additional issues in the petition: (1) the expiration of the period of limitations on assessment for the 2000 through 2005 tax years, and (2) petitioner Nancy Reifler's claim for relief from joint and several liability under sec. 6015(b) and (f). The issue of the expiration of the period of limitations on assessment for the 2000 tax year was resolved in respondent's favor by this Court's opinion in Reifler v. Commissioner, T.C. Memo. 2013-258. Petitioners decided not to pursue and did not put on any evidence regarding the expiration of the period of limitations on assessment for the 2001 through 2005 tax years. Mrs. Reifler decided not to pursue and did not put on any evidence regarding the claim for relief from joint and several liability that she raised in the petition. Accordingly, these issues are deemed conceded.

[3]We note that the issue of the validity of petitioners' 2000 Federal income tax return has been discussed in Reifler v. Commissioner, T.C. Memo. 2013-258, but the issue has not been resolved by this Court. The Court in Reifler discussed the validity of a tax return under the doctrines of substantial compliance and tacit consent for the period of limitations purposes but did not rule on their applicability to the case at hand. Instead, the Court resolved the period of limitations issue under the equitable estoppel doctrine. Id.

**[*4]**                                    FINDINGS OF FACT

Some of the facts have been stipulated. The stipulations of fact and the facts drawn from stipulated exhibits are incorporated herein, and we find those facts accordingly. Petitioners resided in New York when the petition was timely filed. Absent a stipulation to the contrary, an appeal of this case would lie in the Court of Appeals for the Second Circuit.

I.     Preparation and Filing of Petitioners' 2000 Federal Income Tax Return

Petitioners, Bradley C. Reifler and Nancy Reifler, have been married since 1988. Throughout the marriage petitioners developed certain procedures for handling family financial, business, and tax matters. Mr. Reifler had significant business experience. After graduating from college he started a commodity trading firm, Reifler Trading Group, and later a sell-side broker dealer, Pali Capital, offering differentiated packaging of investment strategies for the hedge fund community. Mrs. Reifler was also involved in several businesses, including Sky Blue Farm, Inc., and Studio U, LLC. Petitioners retained a certified public accountant, David Meyrowitz, and his firm at the time, Levine, Levine & Meyrowitz, to prepare their Federal and State income tax returns. Mr. Meyrowitz assisted petitioners in their tax return preparation for many years both before and after 2000.

**[\*5]**  Mr. Meyrowitz, on petitioners' behalf, requested and obtained from respondent extensions of time to file their 2000 joint Federal income tax return (original return or original 2000 return) until October 15, 2001.

Consistent with petitioners' practice since their marriage, the original 2000 return shows petitioners' selection of "married filing jointly" as their filing status and includes income from activities in which both participated.  Mrs. Reifler testified that she relied on Mr. Reifler to handle the family financial and tax matters, including preparation and filing of tax returns.  Mrs. Reifler also testified that she intended to file a joint return for 2000.

Petitioners followed their usual procedures for preparing and signing the original 2000 return.  Mr. Meyrowitz signed and dated the original 2000 return and sent it to petitioners on or about October 9, 2001.  Mr. Reifler signed the original 2000 return, took it home, and placed it in a bin where he usually placed documents that required his spouse's signature.  The next morning Mr. Reifler took the original 2000 return back to his office and mailed it to respondent's Andover, Massachusetts, Service Center (Andover Service Center).  The reason Mrs. Reifler did not sign the original return is not known.  There was no date next to Mr. Reifler's signature.  Mr. Reifler testified he does not recall checking for his wife's signature before mailing the original 2000 return.

**[\*6]**  Sometime after the Andover Service Center received the original 2000 return, respondent returned it to petitioners.  The Internal Revenue Manual (IRM) requires the examining agent to perform certain actions before sending a return back to a taxpayer.  <u>See</u> IRM pt. 3.11.3.6.2.1 (Jan. 1, 2001).  The examining agent must attach certain forms explaining to the taxpayer why the return is being sent back, what needs to be done with respect to the tax return, and when is the deadline to comply and resubmit the return.  <u>Id.</u>

Petitioners claim they received a date-stamped original 2000 return with some red ink marks on it but did not receive any attached correspondence.  The date on the stamp was October 15, 2001.  Neither Mr. Reifler nor Mr. Meyrowitz could recall discussing any correspondence related to the original return.[4]

Mr. Reifler explained that he was not alarmed to have received back the original tax return with some red ink marks on it because he requested copies of his tax returns from time to time for various business reasons.  Specifically, Mr. Reifler claimed that near the end of 2001 he needed a copy of his tax return to submit to the European American Bank (EURAM) because he was joining the EURAM's board of directors as of January 2002.

---

[4]At trial Mr. Reifler testified that he relied heavily on Mr. Meyrowitz' tax expertise.  Petitioners usually consulted with Mr. Meyrowitz when it came to correspondence with tax authorities.

**[*7]** Petitioners did not subsequently send the original return back to the Andover Service Center.

## II.     The Second 2000 Return

On July 29, 2002, respondent issued a taxpayer delinquency notice to petitioners, informing them that he had not received their 2000 Federal income tax return. On August 25, 2002, after petitioners discussed the delinquency notice with Mr. Meyrowitz, they signed a second Form 1040, U.S. Individual Income Tax Return, and supporting schedules, stated August 25, 2002, as the date of signing, and sent it to the Andover Service Center (second 2000 return). Petitioners maintain that this was merely a copy of the original return, but they did not include any correspondence with the second 2000 return explaining their position to respondent. As a result, respondent treated the second 2000 return as petitioners' original Federal income tax return for 2000 with a filing date of September 2, 2002.

## III.    Petitioners' Subsequent Treatment of the Original 2000 Return

On April 29, 2004, respondent commenced an audit of petitioners' returns for the years 2000 through 2005. Petitioners consented several times to extensions of the period of limitations with respect to the 2000 tax year.

**[\*8]** On July 1, 2005, Mr. Meyrowitz sent a letter to respondent notifying him that petitioners considered the original 2000 return as the return triggering the running of the period of limitations for the 2000 tax year. This was the first time the issue of the original 2000 return's submission date and validity came up.[5]

Respondent issued the notice of deficiency to petitioners on May 17, 2010, before the expiration of the last extension.

Petitioners had possession and control of the original 2000 return at all times before trial. At trial petitioners introduced the original return and signature pages into evidence as Exhibits 16-P and 17-P. Mr. Reifler admitted in an affidavit dated November 2, 2011, that he had made certain alterations to the original return. The alterations included covering red ink marks on the original return in opaquing liquid, making a copy of page 2, and asking Mrs. Reifler to sign the copy of page 2. Mr. Reifler separately kept the original of page 2 and attached a copy signed by Mrs. Reifler to the rest of the return that had been sent back to petitioners by the Andover Service Center. Mr. Reifler likely made the

---

[5]The Court held in Reifler v. Commissioner, T.C. Memo. 2013-258, in favor of respondent on the period of limitations issue. The opinion discussed the validity of the original 2000 return but resolved the matter on equitable estoppel grounds.

[*9] alterations shortly after the Andover Service Center sent the original 2000 return back to him.[6]

## OPINION

### I.    Burden of Proof

In general, the taxpayer bears the burden of proof except as otherwise provided by statute or determined by the Court.  Rule 142(a)(1).  The Commissioner has the burden of production with respect to the liability of an individual for an addition to tax under section 6651(a)(1).  See sec. 7491(c); see also Rule 142(a)(1) (the Commissioner bears the burden of proof as to his allegation in the answer concerning the increase in the section 6651(a)(1) addition to tax).  The burden of showing reasonable cause under section 6651(a) remains on the taxpayer.  See Higbee v. Commissioner, 116 T.C. 438, 446-448 (2001).

### II.    Validity of the Original 2000 Return That Lacked Mrs. Reifler's Signature

#### A.    Signature Requirement Overview

This case is about taxpayers who filed a purported joint Federal income tax return lacking the signature of one of them.

---

[6]The alleged reason for making the alterations is that Mr. Reifler needed "a return that included my wife's signature, for some purpose having nothing to do with the IRS.  It may have been to secure a line of credit or for purposes of business financing, or for some other business reason."

**[\*10]** Section 6011 grants the Commissioner authority to develop forms and regulations for filing tax returns and requires taxpayers to comply with those forms and regulations. See sec. 6011(a); sec. 1.6011-1(b), Income Tax Regs. Further, section 6061(a) provides that any return or other document required to be made under any provision of the internal revenue laws or regulations must be signed. Regulations require signatures of both spouses on a joint tax return.[7] Sec. 1.6012-1(a)(5), Income Tax Regs. Form 1040 for the 2000 tax year provides space for signatures of both spouses and states in part: "If a joint return, both must sign." Instructions for the 2000 Form 1040 include the same requirement and

---

[7]There are two exceptions to this general rule. First, a spouse may sign a return on behalf of the other spouse if he or she acts as an agent of a spouse and complies with the requirements of sec. 6012-1(a)(5), Income Tax Regs. Whenever a return is made by an agent, it must be accompanied by a power of attorney authorizing the agent to represent his principal in making, executing, or filing the return. Id. This exception does not apply under the facts of this case because there is no evidence in the record that Mrs. Reifler ever executed a power of attorney granting Mr. Reifler the authority to sign tax returns on her behalf. The original 2000 return did not include a power of attorney. The second exception applies in cases where one spouse is physically unable by reason of disease or injury to sign a joint return. Id. In such cases, the other spouse may with the oral consent of the one who is incapacitated, sign the incapacitated spouse's name in the proper place on the return followed by the words "By _____ Husband (or Wife)" and by the signature of the signing spouse in his or her own right. A declaration of the nonsigning spouse must be attached to such a tax return explaining the circumstances preventing the spouse from signing the return. Again, this exception is not applicable in the case before us because there is no evidence that Mrs. Reifler was absent from the country or incapacitated such that she could not sign the tax return in October 2001.

[*11] unequivocally warn that a Form 1040 is not considered a valid tax return unless signed by a taxpayer.  See Instructions for 2000 Form 1040, p. 52.[8]

Signatures on a tax return not only verify that a return has indeed been filed by the person indicated on the front page of a Form 1040 but also certify that all the statements in the tax return are made under penalty of perjury and are true, correct, and complete to the best of the taxpayer's knowledge.  See sec. 6065; 2000 Form 1040, p. 2.

Petitioners advance two theories in support of their claim that the original 2000 return was a valid and timely filed joint Federal income tax return despite the lack of Mrs. Reifler's signature.[9]  The first theory, the so-called substantial compliance doctrine, stands for the idea that a tax return need not be perfect to be valid.  See, e.g., Badaracco v. Commissioner, 464 U.S. 386, 397 (1984);

---

[8]We take judicial notice of these instructions pursuant to Fed. R. of Evid. 201, at the request of respondent.  Instructions are publicly available on the Internal Revenue Service (IRS) Web site, and the text of instructions is not subject to reasonable dispute.

[9]At trial the Court raised the question whether the October 2001 return might be a valid separate return of Mr. Reifler.  Petitioners' counsel referred to this colloquy in their opening brief but did not pursue this possibility (nor explain the consequence, if any, on petitioners' liability for the addition to tax under sec. 6651(a)(1)), urging instead "that a valid joint Form 1040 was filed by both Mr. and Mrs. Reifler on October 15, 2001."  We therefore do not address the possibility that the original 2000 return is a valid separate return.

**[*12]** <u>Zellerbach Paper Co. v. Helvering</u>, 293 U.S. 172, 180 (1934); <u>Florsheim</u>

<u>Bros. Drygoods Co. v. United States</u>, 280 U.S. 453, 459-460 (1930).  The second

theory, the tacit consent doctrine, is a narrowly tailored exception to the

requirement that both spouses sign a joint tax return.  <u>Reifler v. Commissioner</u>,

T.C. Memo. 2013-258.  Courts use it mostly in situations where one of the spouses

signs a return for the other, and the other spouse later disputes the issue of joint

and several liability for the deficiencies and penalties arising out of a purportedly

joint tax return.  <u>Id.</u>  We hold that neither of these theories applies here.  The

original 2000 return received and stamped by the Andover Service Center on

October 15, 2001, was not a valid and timely filed joint Federal income tax return

because it lacked Mrs. Reifler's signature.

      B.     <u>Substantial Compliance Doctrine</u>

Petitioners contend that caselaw has significantly changed the apparently

compulsory language of the Code with respect to compliance with tax return

requirements.  Indeed, in <u>Florsheim Bros. Drygoods Co.</u>, 280 U.S. at 459-460, the

Supreme Court in dicta mentioned that tax returns may be imperfect and contain

mistakes.  In <u>Zellerbach Paper Co. v. Helvering</u>, 293 U.S. at 180, Justice Cardozo,

speaking for the Court, stated that even though at the time of filing the omissions

and inaccuracies in a return were such as to require an amendment, if a return

**[*13]** "purports to be a return, is sworn to as such * * * and evinces an honest and genuine endeavor to satisfy the law" it will be saved from nullity.  Another Supreme Court case, Badaracco v. Commissioner, 464 U.S. at 397, confirmed that even a fraudulent return could be sufficient to trigger the running of the period of limitations if, on its face, such a return meets the Zellerbach test.

Yet petitioners' reliance on Florsheim, Zellerbach, and the substantial compliance doctrine is misplaced.  This Court in Beard v. Commissioner, 82 T.C. 766, 777 (1984), aff'd per curiam, 793 F.2d 139 (6th Cir. 1986), clarified the elements of the Supreme Court test in Florsheim to determine whether the filing of a document is sufficient to trigger the running of the period of limitations and for the purpose of section 6651(a)(1).  The Beard test includes four distinct elements, one of which is a requirement that a taxpayer execute the return under penalties of perjury.  Id.  Other elements of the Beard test are:  (1) the return must have sufficient data to calculate tax liability; (2) the document must purport to be a return; and (3) there must be an honest and reasonable attempt to satisfy the requirements of the tax law.  Id.

Petitioners argue that under the substantial compliance doctrine their original 2000 return was valid because it met all of the requirements of the Beard test except being signed by Mrs. Reifler.  Respondent contends that the lack of a

[*14] signature on the original 2000 return is fatal to finding it valid under the

Beard test.  We agree with respondent.  Signature under penalty of perjury and an

honest and reasonable attempt to satisfy the requirements of the tax law are two

distinct and separate requirements under Beard.

The general rule in the Second Circuit is that an unsigned return does not

start the running of the period of limitations.  Kalb v. United States, 505 F.2d 506,

508 (2d Cir. 1974) (citing Lucas v. Pilliod Lumber Co., 281 U.S. 245, 248-249

(1930), holding that a return unverified by oath did not meet the plain

requirements of the statute).  Other Courts of Appeals and this Court follow the

same rule.  See, e.g., Olpin v. Commissioner, 270 F.3d 1297, 1300 (10th Cir.

2001) ("The general rule when a tax return is unsigned is that it is invalid."), aff'g

T.C. Memo. 1999-426; Bachner v. Commissioner, 81 F.3d 1274, 1280 (3d Cir.

1996) ("[I]nclusion of the taxpayer's signature is a prerequisite to the validity of

the tax return for purposes of the statute of limitations."), remanding 109 T.C. 125

(1997); Shea v. Commissioner, 780 F.2d 561, 568 (6th Cir. 1986) ("[F]ailure of

either party to sign the return * * * renders it invalid[.]"), aff'g in part, rev'g in

part T.C. Memo. 1984-310; Brafman v. United States, 384 F.2d 863, 868 (5th Cir.

1967) (stating that the Code requires tax returns to be signed in order to be

effective); Doll v. Commissioner, 358 F.2d 713, 714 (3d Cir. 1966) ("return failed

[*15] to meet the requirements of the statute" where neither taxpayer signed), aff'g T.C. Memo. 1965-191; Elliott v. Commissioner, 113 T.C. 125, 128 (1999) ("Failure to satisfy the requirements for filing a return is fatal to the validity and the timeliness of the return.").

An invalid return remains invalid even if the IRS accepts and processes it. See, e.g., Olpin v. Commissioner, 270 F.3d at 1301 ("[A]cceptance cannot cure an invalid return."); Downing v. Commissioner, T.C. Memo. 2007-291, slip op. at 26 (holding IRS' acceptance of return and payment "would not waive the statutory requirements for a valid return"); Julicher v. Commissioner, T.C. Memo. 2002-55, slip op. at 37 ("[T]he signature requirement for purposes of a valid joint return may not be waived by Internal Revenue Service personnel.").

As this Court noted in Beard, the requirements for a return to trigger the running of the period of limitations are the same as those for the purpose of a section 6651(a)(1) analysis. Beard v. Commissioner, 82 T.C. at 777. Thus, signatures of both petitioners on the original 2000 return were necessary to meet the validity requirements for section 6651(a)(1) purposes.

Petitioners point to two cases, Blount v. Commissioner, 86 T.C. 383 (1986), and White v. Commissioner, T.C. Summary Opinion 2002-101, to persuade this

**[\*16]** Court we should apply the substantial compliance doctrine in the current case. Both cases are distinguishable from the case before us.

In Blount, the Commissioner returned the income tax return to the taxpayer with a request to attach a missing Form W-2, Wage and Tax Statement, and re-send the return. See Blount v. Commissioner, 86 T.C. at 385. The return itself had been signed by the taxpayer and thus complied with the Beard requirements on its face. Id. The taxpayer in Blount promptly sent his return with all the requested documents back to the IRS within the stated deadline. Id. The Court held that despite the omission of Form W-2, the taxpayer had filed the return timely. Id. at 387-388. In contrast, in the case before us, petitioners' original 2000 return had not been signed by one of the spouses and was not returned to the Andover Service Center until its resubmission in September 2002.

White v. Commissioner, T.C. Summary Opinion 2002-101, is distinguishable, too.[10] In White, a married taxpayer submitted a tax return that was not signed by his spouse and was missing a Form W-2. Id. The Commissioner sent the return back to the taxpayer with instructions to correct the defects, and the taxpayer then resubmitted the return within the time provided by

---

[10]Sec. 7463(b) precludes Summary Opinions from being treated as precedent in other cases, but this Court's Rules do not prohibit citations of Summary Opinions to the extent they are persuasive.

**[\*17]** the Commissioner. This Court did not impose an addition to tax under section 6651(a)(1) because the Commissioner conceded the issue of the validity of the taxpayer's joint tax return that did not have one spouse's signature. The initial return was deemed to be filed timely. In this Court, the issue of whether a joint tax return is valid with only one spouse's signature has not been litigated or decided. We also note that the Commissioner's concession of an issue in a case, especially a Tax Court case resulting in a nonprecedential Summary Opinion, does not bind him for future cases as opposed to a position taken by the Commissioner in a revenue ruling or other form of official public guidance. See Dover Corp. & Subs. v. Commissioner, 122 T.C. 324, 350 (2004); Rauenhorst v. Commissioner, 119 T.C. 157, 170-173 (2002); see also IBM Corp. v. United States, 343 F.2d 914, 919 (Ct. Cl. 1965) (stating that, as a general rule, a taxpayer "can never avoid liability for a proper tax by showing that others have been treated generously, leniently, or erroneously by the Internal Revenue Service").

Tax law is complex and confusing to most of us. Sometimes it is appropriate for the courts to clarify the subtleties of statutory and regulatory provisions. The requirement of a signature on a tax return, however, is not one of those issues. It would be inappropriate for this Court to use its power to create a potentially unlimited exception to a well-established and fairly simple rule. It

**[*18]** would also be contrary to the principles stated in <u>Beard</u>, <u>Lucas</u>, <u>Kalb</u>, and other cases.

The substantial compliance doctrine indeed allows a taxpayer to file a return that may contain some inaccuracies and mistakes as long as an honest and reasonable attempt to comply with the tax law requirements has been made. But, as clarified in <u>Beard</u>, signing a return under penalty of perjury is a separate and distinct requirement that has not been met in this case.[11] The substantial compliance doctrine is not intended and should not be used to justify a failure to comply with simple and clear requirements. The history of the doctrine and the policy behind it do not support the finding that the substantial compliance doctrine is applicable in this case.

C.    <u>Tacit Consent Doctrine</u>

In their second argument in support of the validity of the original 2000 return, petitioners contend that "[i]t is well-established by a long line of cases that a joint Form 1040 filed with the signature of only one spouse is valid if both the husband and wife intended to file a joint return." (Citations omitted.) Petitioners

---

[11]The IRS has extensive procedures for handling unsigned tax returns. <u>See, e.g.</u>, Internal Revenue Manual pt. 3.11.3.6.2.1 (Jan. 1, 2001). Normally, even the Commissioner's sending back a joint tax return to a taxpayer to sign or provide some supplemental information does not materially prejudice taxpayers. This is a rather taxpayer-friendly regime allowing some room for occasional oversight.

**[\*19]** argue that they are entitled to a finding that the original 2000 return is valid without the signature of Mrs. Reifler under the tacit consent doctrine because they intended to file a joint tax return. Mrs. Reifler stated in an affidavit dated May 16, 2012, that she relied on her husband to handle the family tax matters and acquiesced to the filing of the original 2000 return. Respondent argues that the tacit consent doctrine is relevant only to the issue of determining whether the spouses are jointly and severally liable for the income tax return that they intended to file jointly but has no bearing on the question of whether a Form 1040 signed by one spouse but not the other is an income tax return within the meaning of sections 6011, 6061(a), and 6651(a).

We find petitioners' arguments unpersuasive. At the outset of our discussion of the tacit consent doctrine, we note that courts generally apply this doctrine when one spouse signs a joint return for both spouses and it is later shown that the other spouse has tacitly consented to the joint return filing. Reifler v. Commissioner, T.C. Memo. 2013-258, at \*15. Most of the cases that petitioners cite follow this general pattern. See, e.g., Heim v. Commissioner, 251 F.2d 44 (8th Cir. 1958) (return included both signatures, but it was later discovered that it was the family accountant who had signed the wife's name on the return per her phone instructions; court held the tax return was joint), aff'g 27 T.C. 270 (1956);

**[\*20]** <u>Estate of Campbell v. Commissioner</u>, 56 T.C. 1 (1971) (stating that husband signed a joint return for both his wife and himself; wife never objected to this practice; Court held the tax return was joint); <u>Federbush v. Commissioner</u>, 34 T.C. 740 (1960) (husband signed a joint return both for himself and wife at a time when they had personal difficulties and wife refused to sign; Court held the Commissioner correctly determined the return was a joint return when the taxpayers failed to provide evidence to the contrary), <u>aff'd</u>, 325 F.2d 1 (2d Cir. 1963); <u>Presley v. Commissioner</u>, T.C. Memo. 1979-339 (husband signed the wife's name on a joint tax return after securing her oral permission to do so; Court held the return was joint); <u>Simms v. Commissioner</u>, T.C. Memo. 1968-298 (husband signed a joint tax return for himself and wife; at trial wife tried to assert that she did not sign the tax return and should not be liable for any deficiencies, but failed to meet the burden of proof; Court held tax return was joint), <u>aff'd per curiam</u>, 422 F.2d 340 (4th Cir. 1970).

The facts in the cases that petitioners cite are distinguishable from their own situation. In <u>Heim</u>, <u>Campbell</u>, <u>Federbush</u>, <u>Presley</u>, and <u>Simms</u>, the Commissioner asserted joint and several liability on the basis of returns that were purportedly

[*21] signed by both spouses.[12]  In the current case, there was only Mr. Reifler's signature on the original 2000 return, not Mrs. Reifler's.  Unlike the circumstances in the cases cited above, the Andover Service Center never accepted petitioners' original 2000 return for processing and filing.  Instead, the Andover Service Center followed instructions existing at the time and sent the return back to petitioners for them to correct the defects.

Another case from the Court of Appeals for the Second Circuit that petitioners cite, O'Connor v. Commissioner, 412 F.2d 304 (2d Cir. 1969), aff'g in part, rev'g in part T.C. Memo. 1967-174, is inapposite and illustrates the limitations of the tacit consent doctrine.  In O'Connor v. Commissioner, 412 F.2d at 309, the Court of Appeals stated that the absence of a wife's signature on the return "removes the presumption of correctness ordinarily attaching to the Commissioner's determination of jointness."  When there is no second signature on the tax return, the burden of producing additional evidence on the issue shifts to the Commissioner.  Id.  Because the Tax Court's findings of facts are reviewed by appellate courts for clear error, the Court of Appeals in O'Connor deferred to

---

[12]We note that such returns would also be sufficient under the Beard test on their face.  They would also pass the initial inquiry as to their validity under Badaracco v. Commissioner, 464 U.S. 386 (1984), and Zellerbach Paper Co. v. Helvering, 293 U.S. 172 (1934).

**[*22]** the Tax Court's determination that there was sufficient evidence in the record to support a finding of a joint tax return. Id. In the current case, respondent never suggested that the original 2000 return was a valid joint tax return and did not try to use the tacit consent doctrine to his advantage. To the contrary, the Andover Service Center rejected the original 2000 return because it lacked one spouse's signature and sent it back to petitioners. Thus, the facts in this case are distinguishable from the situation in O'Connor, where the Commissioner accepted the return for filing.

In Downing v. Commissioner, T.C. Memo. 2007-291, another case that petitioners cite to support their position, the taxpayer failed to produce any evidence showing that he and his wife ever filed a return for 1995. The versions of what purported to be the tax return offered by the taxpayer did not have the signature of his wife; they had only the signatures of the taxpayer and the family accountant. Id., slip op. at 24-25. Under the circumstances, the Court held that the taxpayer failed to show he filed a valid joint tax return and did not decide whether the tacit consent doctrine applied to the facts of the case. Id.

We observe the sincerity, candor, and demeanor of each witness to evaluate his testimony and to assign weight thereto for the purpose of finding disputed facts. HIE Holdings, Inc. v. Commissioner, T.C. Memo. 2009-130, aff'd, 521 F.

[*23] App'x 602 (9th Cir. 2013). We will not accept the testimony of a witness at face value if we find that the totality of the facts conveys to us an impression that is contrary to the witnesses' testimony. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 84 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Going back to the facts of the current case, Mrs. Reifler testified that she trusted her husband to take care of the financial and tax matters and intended to file a joint return with him for the 2000 tax year. Yet there is no adequate explanation in the record as to why the regular procedures petitioners had followed for many years--and which had worked well for them before and after 2000--did not work for the 2000 tax year. It is also not clear from the record why Mr. Reifler, a sophisticated businessman, did not check for Mrs. Reifler's signature before mailing in the original 2000 return. Petitioners do not recall whether they discussed the original 2000 return or whether Mr. Reifler ever asked Mrs. Reifler to sign it.

We also find that the subsequent alterations Mr. Reifler made to the original 2000 return, including making a copy of the second page and asking Mrs. Reifler to sign it, indicate that he was aware of the defect in the original 2000 return and its potential significance. We note that petitioners made these alterations soon after receiving the original 2000 return back from the Andover Service Center.

[*24] The record, however, does not provide any explanation as to why Mr. Reifler did not ask Mrs. Reifler to put her signature on page 2 of the original 2000 return and instead asked her to sign a copy. There is also no explanation why petitioners did not produce the original 2000 return in response to the notice of delinquency in 2002. Instead, petitioners executed a clean return, dated it, and sent it to the Andover Service Center.

In sum, petitioners' actions after they received the original 2000 return back from the Andover Service Center seem inconsistent and illogical in the light of their later testimony that in October 2001 they desired and intended to file a joint return.[13]

We find that the facts surrounding both the signing and submitting of the original 2000 return contain too many blanks to preclude the existence of alternative explanations as to the absence of Mrs. Reifler's signature on the original 2000 return. Silence does not necessarily mean "yes". There may be numerous reasons a spouse fails to sign a joint tax return, ranging from oversight

---

[13]Both the original return and the second 2000 return showed a net loss of over $1 million. Petitioners did not claim a refund, but it was still in their best interest to perfect the return and mail it back to the Andover Service Center as soon as possible. Yet petitioners' lack of action in this respect leaves us with too many unanswered questions. Under the circumstances, we cannot take petitioners' self-serving testimony at face value.

[*25] to express refusal to file a joint return. We are reluctant to extend the reasoning from the cases discussing valid on their face tax returns purportedly signed by both taxpayers to situations when one of the required signatures is missing. This would place a high administrative burden both on the Commissioner and on the courts, making us play the guessing game every time we see a purported joint return signed by only one spouse. Although some evidence may weigh in favor of finding that petitioners intended to file a joint return,[14] we find it insufficient in the light of gaps in the record and subsequent treatment of the original 2000 return by petitioners.

Extending the application of the tacit consent doctrine to cases such as the current case has the potential of creating an exception that would swallow the rule. We believe sufficient administrative mechanisms are already in place to deal with such situations. Existing procedures described in the regulations and the IRM provide how to handle documents when one of two required signatures is missing. At the very least, a nonsigning spouse who did not intend to file a joint return may be alerted that something is wrong. Existing regulations also provide an option for

---

[14]Mrs. Reifler affirmed several times that she intended to file a joint tax return for 2000, as in prior and subsequent years. The return included information on businesses Mrs. Reifler was actively involved in (Sky Blue Farm, Inc., and Studio U, LLC). Mrs. Reifler did not file a separate return for 2000.

[*26] more "traditional" families like the Reiflers.[15] If a spouse wants to delegate his or her authority to sign a joint tax return to another spouse, section 1.6012-1(a)(5), Income Tax Regs., provides procedures to designate that spouse as an agent.

Petitioners' argument that it is the intent of the spouses that counts when it comes to filing tax returns is somewhat tempting in that it would allow us to resolve the case before us easily. However, as discussed above, a signature under penalty of perjury has additional significance when it comes to determining the issue of liability for any unpaid taxes or related penalties. It would be unfair to expose a nonsigning spouse who never intended to sign a joint tax return to the burdens of litigation that could span many years when that spouse did not in fact attest to the veracity of the statements on the tax return. We believe the intent to file a joint return is different from signing a document under penalty of perjury, and the two do not supplement or replace each other. Using the tacit consent doctrine in cases when a tax return is rejected by the Commissioner for lack of compliance with the most basic requirements would only create chaos.

---

[15]We use the word "traditional" in the sense petitioners used it in their pleadings to describe their family relationship.

**[*27]** D.  Conclusion

We hold that petitioners did not timely file a valid joint tax return on October 15, 2001, because the return filed with the Andover Service Center lacked one of the essential--and easiest to satisfy--requirements for a valid joint tax return, the signatures of both spouses.  Petitioners' reliance on the substantial compliance and tacit consent doctrines is misplaced, as neither doctrine supplants or waives the requirement for a signature under penalty of perjury contained in the Code, the regulations, and almost a century of caselaw.  It is in the province of Congress to promulgate new laws, and it is in the province of the Secretary to adopt new regulations implementing provisions of the Code.  Should Congress or the Secretary deem one signature to be sufficient for a valid joint tax return, this Court will follow the new rule.  Until then, signatures of both spouses will be required for a valid joint tax return.

III.  Addition to Tax Under Section 6651(a)(1) for Failure To Timely File the 2000 Tax Return

A.  Overview of Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to timely file a return when due "unless it is shown that such failure is due to reasonable cause

[*28] and not due to willful neglect". The addition equals 5% for each month that the tax return is late, not to exceed 25% in total.

"Reasonable cause" requires the taxpayer to demonstrate that he exercised ordinary business care and prudence and nevertheless was unable to file his or her Federal income tax return by the due date. See United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c), Proced. & Admin. Regs. Willful neglect is defined as a "conscious, intentional failure or reckless indifference." Boyle, 496 U.S. at 245.

Petitioners maintain they acted with reasonable cause and without willful neglect with respect to the preparation and filing of their joint return for the 2000 tax year. Petitioners indeed followed all their regular procedures in preparing and mailing the original 2000 return. Our decision in this case, however, hinges on whether petitioners exercised ordinary business care and prudence in handling the original 2000 return when the Andover Service Center sent it back.

Petitioners maintain they did not receive any correspondence attached to the original 2000 return explaining what they needed to fix in their tax return. Neither petitioners nor their accountant, Mr. Meyrowitz, have any memory of receiving or discussing any correspondence related to the original 2000 return. Petitioners and Mr. Meyrowitz testified that the first time they learned about respondent's having

[*29] no record of their 2000 income tax return filing was when they received a notice of delinquency in 2002.

Thereafter, Mr. Meyrowitz printed out a copy of petitioners' 2000 return from his files, signed it, and instructed petitioners to sign and mail it to the Andover Service Center. Petitioners mailed this second 2000 return on or about August 25, 2002. Neither petitioners nor Mr. Meyrowitz prepared a cover letter to accompany the return and explain petitioners' position.

Respondent argues he is entitled to a presumption of administrative regularity. See, e.g., FTC v. Owens-Corning Fiberglas Corp., 626 F.2d 966, 975 (D.C. Cir. 1980) (stating that unless contrary evidence is produced, Government agencies are entitled to a presumption of administrative regularity and good faith). To overcome this presumption, the person challenging it must come forward with evidence tending to show that the mandated procedure was not followed. Parkinson v. Commissioner, 647 F.2d 875, 876 (9th Cir. 1981), aff'g T.C. Memo. 1979-319.

Petitioners contend that the burden of production is on respondent on the issue of whether there was any correspondence attached to the original 2000 return sent back to them by the Andover Service Center. Respondent maintains that, under the presumption, we should find that the Andover Service Center properly

[*30] followed the procedures set out in IRM pt. 3.11.3.6.2.1 (Jan. 1, 2001) by enclosing correspondence explaining why it was returning the original 2000 return.

We do not need to address the presumption of administrative regularity here. Regardless of whether the Andover Service Center actually followed the established procedures in this case, it is difficult, if not impossible, to conclude that Mr. Reifler, a sophisticated businessman, acted with ordinary business care and prudence when he failed to follow up with the IRS or his accountant, Mr. Meyrowitz, as to why the original 2000 return was sent back to him with some red ink marks on it. We find Mr. Reifler's testimony on this issue unpersuasive.[16] Petitioners have been filing tax returns for many years. Petitioners never previously received the originals of their tax returns back. A person exercising ordinary business care and prudence would have inquired as to the reason he or she received a tax return back. There is no evidence on the record showing that

_____

[16]Mr. Reifler testified that he may have requested a copy of the tax return from the IRS because he needed to submit it to be appointed to the board of directors of EURAM. There is no corroborating evidence on this issue besides Mr. Reifler's testimony. In a supplemental affidavit dated November 2, 2011, Mr. Reifler claimed he may have needed a "completely signed return" to secure a line of credit or for purposes of business financing or for some other business reason.

**[*31]** petitioners attempted to consult with anybody until they received a notice of delinquency from respondent in 2002.

As we discussed above, subsequent alterations to the original 2000 tax return indicate petitioners knew Mrs. Reifler's signature was missing. These alterations also indicate petitioners understood that a tax return not signed by one of the spouses would be insufficient for some business purposes. Yet petitioners chose to do nothing until they received the delinquency notice. Petitioners also chose not to provide respondent with a copy of the original 2000 return when they sent the second 2000 return to the Andover Service Center. In our view, such conduct does not meet the standard of ordinary business care and prudence.

Because petitioners did not demonstrate that their failure to timely file a Federal income tax return for the 2000 tax year was due to reasonable cause and not willful neglect, we hold that petitioners are liable for the addition to tax under section 6651(a)(1).

IV. Conclusion

We have considered all of the arguments that petitioners made, and to the extent not discussed above, conclude that those arguments not discussed herein are irrelevant, moot, or without merit. We have considered respondent's arguments only to the extent stated herein.

**[\*32]** To reflect the foregoing and concessions by the parties,

Decision will be entered

under Rule 155.